PROMONTORY RANCH COMPANY, a Corporation,. Respondent, v. JOSEPH ARGILE and Others,. Appellants.

### No. 1579.   (79 Pac. 47.)

1. **Waters and Watercourses: Appeal: Findings.**
   A finding of fact by the trial court will not be disturbed on appeal unless it is clearly against the preponderance of evidence and is manifestly against justice and right.

2. **Same: Irrigation Rights: Abandonment.**
   In order to constitute an abandonment of a water right, there must be an intent to abandon, coupled with some act of relinquishment by which the intent is carried out.

3. **Same.**
   Revised Statutes 1898, section 1262, provides that, when the appropriator of water abandons or ceases to use the same for a period of seven years, the right ceases; but questions of abandonment shall be questions of fact. In a suit to quiet title to a water right, there was evdence that neither plaintiff nor its predecessor in interest ceased to use the water at any one time for a period of seven years, and there was. no evidence, except some evidence of nonuser—on which the court found in favor of plaintiff—that it was at any time the intention of plaintiff or its predecessor in interest to abandon the use of the water for irrigation. *Held*, that a. case of abandonment was not established.

(Decided December 31, 1904.)

Appeal from the First District Court, Box Elder County.—*Hon. C. H. Hart*, Judge.

Action to determine the right to the use of certain. waters. From a judgment in favor of the plaintiff,. the defendants appealed.

AFFIRMED.

*W. R. Hutchinson, Esq.,* for appellants.

"Water combined with the earth, or passing through it, by percolation or filtration, or chemical attraction, has no distinctive character of ownership from the earth itself any more than the metallic oxides of which the earth is composed. Water, whether moving or motionless in the earth, is not, in the eye of the law, distinct from the earth." Roath v. Driscoll, 20 Conn. 540; Honson v. McCue, 42 Cal. 303; Ballard v. Tomlinson, 24 American Law Reg. 636. But where percolating waters collect or are gathered in a stream running in a defined channel, no distinction exists between waters so running under the suface or upon the surface of land. They are such property, or incidents to property, as may be acquired by grant, express or implied, or by appropriation." Cross v. Kitts, 10 Pac. 412; Irrigation Co. v. Michaelson, 21 Utah 248; Long on Irrigation 33.

It is essential to the nature of percolating waters that they do not form part of the body or flow, surface or subterranean, of any stream, they may either be rain waters, which are slowly infiltrating through the soil, or they may be waters seeping through the banks or bed of the stream which have so far left the bed of the other waters as to have lost their character as a part of the flow. Irrigation Dist. v. Irr. Co., 26 Calif. 485.

It is clearly to the best interests of a State that all flowing water shall be subject to appropriation so that the same may be conserved to supply all beneficial uses. In all cases where there is doubt to which a given water supply belongs the doubt should be resolved in favor of its being running water and subject to appropriation. See last case cited; Trustees of Delhi v. Youmans, 50 Barber 316.

Water from springs may be appropriated by means of a ditch taking the water directly from the

spring.  Long on Irrigation, sec. 32; Ely v. Ferguson, 27 Pac. Rep. 587.  The fact that a stream has its source in a flowing spring, does not change its nature or exempt its waters from apropriation.  Long on Irrigation, sec. 36, p. 62; Geddes v. Parrish, 21 Pac. Rep. 314.

The fact that the spring which supplied the waters appropriated by these appellants arose upon the land owned by the plaintiff company can make no difference and could not in any way affect the right of the appellants and their predecessor in interest in the appropriation of the waters of said spring.

"In the States in which the doctrine of riparian rights is not in force, there is no restriction upon the exercise of the right of appropriation, so far as the character of the land to be irrigated or from which the water is to be taken, is concerned; but the right extends to the unappropriated water of all the natural streams within the State, whether the land by or through which they flow be private or a part of the public domain."    Long on Irrigation, sec. 25, p. 50; Coffin v. Ditch Co., 6 Colo. 443; Hammond v. Rose, 19 Pac. 466; Oppenlander v. Ditch Co., 31 Pac. 856; Cross v. Kitts (Cal.), 10 Pac. 412.

It is held by Mr. Long in his work on Irrigation that the above is the law in States where riparian rights are not recognized.  Riparian rights are not recognized in this State.  Stowell v. Johnson, 7 Utah 225.

Appellants contend that the evidence shows that whatever right McDaniel had to these waters by appropriation had been abandoned.  Rev. St. 1898, sec. 1262.  In fact the testimony of nearly all the witnesses in this case shows that the land settled upon by Mr. McDaniel was absolutely without improvements other than the little shack, and a little wire fencing; that the land was wild land, grown up to sage brush, and without any cultivation even during the years that McDaniel lived upon it, and that since he moved away in 1887, down to the trial of this case, the

place was totally abandoned and not used by anyone, and without any cultivation whatever. Appellants further contend that they now own the right to use these waters not only by a lawful appropriation, but also through having acquired title by adverse possession. Smith v. Hawken (Cal.), 42 Pac. Rep. 453; Irrigation Co. v. Moyle, 4 Utah 328, 9 Pac. 867; Fisher v. Bountiful, 21 Utah 36, 59 Pac. 520; Long on Irrigation, sec. 88; Black's Pomeroy, sec. 98, p. 184; Kinney on Irrigation, sec. 293, p. 470.

The right to the use of water may be acquired by the exclusive and uninterrupted enjoyment of water in a particular way for the period corresponding to the time fixed by the Statute of Limitations as a bar to the entry on land. Crandall v. Woods, 8 Calif. 136; Water Co. v. Crary, 25 Calif. 504.

*Messrs. Richards, Richards & Ferry* for respondent.

The findings of fact, conclusions of law and decree are supported by the evidence. In the case of Whitmore v. Utah Fuel Company, 26 Utah 499, we find the following: "This court has repeatedly held that a finding of fact by a trial court will not be set aside unless it is clearly against the preponderance of the evidence." Citing a great many of the decisions of this court in support of the proposition. "Where there is nothing to show that the waters of a spring or well are supplied by any defined flowing stream, the presumption will be that they have their source in the ordinary percolations of water through the soil. Percolating waters and those whose sources are unknown, belong to the realty in which it is found."

In Bloodgood v. Ayes, 108 N. Y. 400, Mr. Justice Finch, delivering the opinion of the court, said. "Such a spring belongs to the owner of the land. It is as much his as the earth or minerals beneath the surface,

28 Utah—26

Ranch Co. v. Argile.

and none of the rules relating to water courses and their diversion apply."

In Metcalf v. Nelson, 8 S. Dak. 87, it was said: "As the hidden water in the plaintiff's soil belonged to him as a part of it, he might, by artificial means, separate it from the soil, and it would still belong to him. He might sink a well into which such water would work its way and the accumulation in the well would be his and subject to his proprietary control." 21 Utah 255-56.

And so it follows, conclusively, that if the water is separated from the soil by nature, where it has its origin in percolation, the owner of the soil still retains the proprietary interest and the absolute control. And, in the language of this court, in the case of Crescent Mining Company v. Silver King Mining Company, 17 Utah 447: "The ordinary rules of law applying to the appropriation of surface streams do not apply to percolating waters and subterranean streams with undefined and unknown sources and banks;" citing numerous cases.

In the Willow Creek Irrigation Company Case, supra, this court says: "The water was therefore not subject to appropriation under any statute or rule of law, and by its use the appellant acquired no title to it, hence, the respondent had the lawful right to divert and use the water in such manner as she chose and may continue so to do." 21 Utah 257.

STATEMENT OF FACTS.

This is an action involving the right to the use of the water of a certain spring which arises on a certain forty acres of land situate in Box Elder county, in this State, and which land is now owned by plaintiff, and which was patented in 1889 to one Levi McDaniel, plaintiff's predecessor in interest. McDaniel entered upon the land in 1882, built a house upon it, and fenced and plowed a few acres of the land. In 1887 he sold

this land to plaintiff company, and moved away. Plaintiff was at the time, and since has been, engaged in the business of ranching, including the ranging and grazing of stock upon the public domain.   Since 1887 the spring has been used as a watering place for plaintiff's stock that ranged upon the public domain in that neighborhood.   The water was also used for culinary purposes by plaintiff's employees, who frequently camped upon the land in the vicinity of the spring while driving and rounding up stock for plaintiff.   To this extent there is little, if any, substantial conflict in the evidence. On the other points in the case there is a sharp conflict in the testimony.   The witnesses for the plaintiff testified, in substance, that, immediately after McDaniel entered upon this land in 1882, he constructed a dam around the spring, forming a small reservoir, and diverted the water therefrom by means of a ditch, and used it for irrigating a small garden, which he had fenced by itself within a larger inclosure to prevent the stock which were turned into the larger field from trespassing upon the cultivated portion.   The evidence of plaintiff's witnesses respecting the construction of this reservoir by plaintiff's predecessor in interest is corroborated by the testimony of one of defendants' principal witnesses, who testified that he was familiar with the spring, and its location in 1891; that he saw the remnants of a small reservoir which had been washed out, and that the appearance indicated that the dam originally was forty or fifty feet in length, and the width of the washout about fifteen feet.   The evidence for plaintiff also tended to show that the conditions referred to, at and around the spring, continued until and including the year 1887, from which time, to and including 1897, the water, of which there is but a small stream, ran in an easterly direction from the spring, and spread out on plaintiff's land, causing grass to grow, and producing a small amount of pasturage, which was utilized by plaintiff for grazing its stock; that in 1893, and again in 1897, plaintiff turned the water from the nat-

ural channel onto its, plaintiff's land, for the purpose
of causing grass to grow for pasturage. The evidence
for plaintiff also tends to show that defendants never,
prior to 1886, diverted the water from its natural chan-
nel and conveyed it onto their land; that plaintiff, in
1892, through its employees, first learned that defend-
ants claimed title to the water. Defendants' witnesses
admitted that plaintiff's predecessor in interest had
fenced in a small field near the spring, and in 1886
raised a crop of rye within the inclosure, but insisted
that the crop was produced without irrigation; that the
water from the spring was never used by plaintiff or its
predecessor, McDaniel, for irrigation purposes; that
no grass or pasturage was ever produced on plaintiff's
land because of the spreading of the water on the land
below the spring or otherwise. Witnesses for defend-
ants also testified that, in the year 1894, defendants'
predecessor in interest constructed a reservoir around
the spring, which was from twenty-five to thirty feet in
width, and, when filled, contained about three feet of
water; that in 1894 or 1895 he commenced using the
water from the reservoir, by which, together with a
small stream on his own land, he irrigated a few acres
of land, and continued to so use the water from this
spring, when not interrupted by plaintiff, as hereinbe-
fore stated until the commencement of this action. De-
fendants also introduced testimony showing that, when
plaintiff turned the water from defendants' ditch onto
plaintiff's premises, defendants, on each occasion when
they discovered that the water had been diverted from
their ditch, immediately turned it back again. When
the testimony was all in, the judge who heard the case,
at the request of the parties to the action, made a per-
sonal inspection of the spring, ditches, and of the two
ranches where it was claimed water had been utilized
for irrigation purposes. Judgment was entered for
the plaintiff, quieting its title to the water in issue.
Defendants appeal.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellants' first contention is that the waters in question, at the time they were diverted from their natural channel by David Farley, appellants' predecessor in interest, and conveyed by him onto what is now known as the "Argile Ranch," were open to appropriation, and that the evidence shows that a lawful appropriation of the waters was made by Farley. There is a conflict in the evidence respecting the use, if any, that was made by respondent's predecessor in interest of the waters for irrigation purposes prior to 1894. The court found: "(4) That in the year A. D. 1882 the plaintiff's predecessor in title and interest, the said McDaniel, entered upon said lands and built a house thereon, fenced in a garden spot, and plowed three or four acres of ground for a garden; that he built a dam in a semicircular form around on the easterly side of the spring, about 25 to 30 feet long, and from 2 to 2 1-2 feet high; that by said dam all the waters of said spring were diverted and used upon the garden for the purpose of raising potatoes, cabbage, and lucerne, and were so continued to be diverted and used during the irrigating seasons of each year until the year 1887." There is a conflict in the evidence as to whether McDaniel used the water for the purpose of irrigation between 1882 and 1887, and to the extent as found by the court, but there is abundant evidence to support the finding. The court not only confronted the witnesses while they were giving their testimony, and had an opportunity to observe their appearance and demeanor while testifying, but he made a personal examination of the spring, ditches and premises upon which it is claimed the water has been used. The court, in its oral decision, which is made a part of the record, made the following comment respecting the impressions created in the mind of the court respecting the credibility of certain witnesses, because of their appearance while on the stand and their manner of testi-

fying: "The witnesses offered by plaintiff to prove that the water was diverted and flowed exclusively upon the premises now owned by plaintiff from 1883 until defendants' predecessor in interest diverted the same impressed the court as being truthful men;" and, in referring to the testimony of the principal witness for the defense on the question as to when the defendants built the reservoir and first diverted the water, said that the testimony of this witness "was not very convincing to the court"—which shows that the court, in arriving at its decision, not only took into account the volume of testimony produced at the trial by each party, but also the weight to which such testimony was entitled; and, as the preponderance of the evidence depends more upon the value of testimony than on the volume or quantity thereof, we are not prepared to say that the court erred in its conclusions in determining which side of the controversy on this point was supported by a preponderance of the evidence. This court, in a long line of decisions, has repeatedly held that a finding of fact by a trial court will not be disturbed unless it is clearly against a preponderance of the evidence and is manifestly against justice and right.

The next contention of appellants is that, conceding respondent's predecessor in interest appropriated the water, as found by the court, the evidence shows an abandonment of any and all right and title to it for irrigation purposes that may have been acquired by such appropriation and use, and that in 1894 the water was again open to appropriation. The court found, and we think there is ample evidence to support the finding: "(5) That in and after the year A. D. 1887 the plaintiff and its predecessor in interest diverted and used all the waters of said spring upon another portion of the plaintiff's said lands and premises for the purpose of irrigating and making a meadow to raise grass and pasturage for animals, and so continued to divert and use all of said waters for said purpose during several

years, until and including the year A. D. 1896, except that in the year 1891, 1892, and 1893, at times, the said waters flowed down the natural channel and onto a swale or low place on premises now owned by defendants." From 1891 until the commencement of this action in July, 1902, the record shows that but little use was made of the water in question by respondent for irrigation purposes. There is, however, evidence in the record which shows that in 1893 L. A. Nelson, who was respondent's superintendent, turned the water from its natural channel onto the adjoining land of respondent for the purpose of producing grass and pasturage, and again turned the water for the same purpose in 1897. There is also evidence in the record that respondent's ranch would be worthless without the water. It is a well-settled principle of law that in order to constitute an abandonment there must be an intent to abandon, coupled with some external act of relinquishment by which the intent is carried out. 1 Am. and Eng. Ency. Law (2 Ed.), 1. In 1 Cyc. 5, the rule is stated as follows: "In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry, for there can be no abandonment without the intention to abandon. Thus, in jurisdictions recognizing the doctrine that title to land may be lost by abandonment, ceasing to cultivate land, or mere inaction and removal to another place, is not enough, without some act or disclaimer or other fact importing and showing a positive intention to abandon all claim of ownership. So the mere suspension of the exercise of a right, without evidence of the intention to abandon it, is not sufficient to destroy the right." Section 1262, Revised Statutes 1898, provides that "the appropriation must be for some useful or beneficial purpose, and when the appropriator, or his successor in interest, abandons or ceases to use the water for a period of seven years the right ceases; but questions of abandonment shall be questions of fact, and shall be determined

as are other questions of fact.'' There is evidence in the record which shows that neither respondent nor its predecessor in interest, McDaniel, ceased to use the water in question at any one time for a period of seven years, and there is no evidence in the record, other than that of nonuser, which tends to show that it was at any time the intention of respondent or its predecessor in interest to abandon the use of the water for irrigation. Therefore, applying the foregoing rules of law to the facts and circumstances of this case, it is apparent that a case of abandonment has not been made out, as no intention to abandon its right to the water on the part of respondent has been shown, except, as stated, the evidence of nonuser, which question the court found in favor of respondent.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.