## GILL et al. v. MALAN et al.

No. 1633 (82 Pac. 471).

1. WATERS AND WATER COURSES—APPROPRIATION.—In an action to determine the title to the waters of a certain spring having its source on plaintiffs' land, the evidence showed that plaintiffs' grantors and predecessors in interest in 1887 purchased whatever right and interest defendants had in the spring, and all ditches and flumes constructed and used by them for conveying the water from the spring to their premises, together with all easements and rights of way which they had acquired for the maintenance of such ditches and flumes. Thereafter the water continued to flow along and through the artificial water courses which had passed to plaintiffs' grantors. Held, that the water was not subject to appropriation by defendants, unless abandoned by the owners thereof.[1]

---

[1] Promontory Ranch Co. v. Argile, 28 Utah 398, 79 Pac. 47.

2. SAME.—In an action to determine the title to waters of a spring having its source on plaintiffs' land, the fact that neither plaintiffs nor their grantors made any use of the water, and permitted it to continue to flow through an artificial water course which they had purchased from one having a right thereto, was not sufficient to show abandonment, so as to render the water subject to appropriation, especially in view of other affirmative acts of plaintiffs tending to show that they had no intention of abandoning their rights.

3. LANDLORD AND TENANT—ADVERSE POSSESSION OF TENANT.—A tenant cannot, as against his landlord, acquire water rights by adverse use.

(Decided September 2, 1905.)

APPEAL from District Court, Weber County; H. H. Rolapp, Judge.

Action by Elizabeth B. Gill and others against Bartholomew Malan and others. From a judgment in favor of defendants, plaintiffs appeal.

REVERSED.

C. C. Richards and A. E. Pratt for appellants.

T. D. Johnson and V. C. Yunnell for respondents.

STATEMENT OF FACTS.

This is an action to determine the title to the waters of a certain spring which rises and has its source on plaintiff's land, and to recover damages from defendants for rock quarried and removed by them from said land. The land upon which the spring rises is situated in Weber county, Utah, at the mouth of Taylor's Canyon, near Ogden City, and is the west half of the north half of section 35, in township 6 north, range 1 west of the Salt Lake meridian. This land was segregated from the public domain in 1865, and became the property of plaintiffs' remote grantor, the Union Pacific Railway Company. In the year 1886 the Union Pacific Railway Company conveyed said land to Thomas Cahoon and Robert

Robinson, in pursuance of a contract entered into by it May 14, 1880. In 1884 an agreement was entered into between Cahoon, Robinson, and others on the one hand, and Edaly F. Hampton on the other, whereby Hampton acquired the right to conduct the water of the spring in question to his own premises in section 34, in consideration of which he relinquished a claim and interest he had in and to a stream of water which flowed from Taylor's Canyon. From that time until December, 1887, Hampton and his wife, who is one of the defendants in the action, used the water from the spring in controversy for the irrigation of certain lands in section 34 adjoining the lands now owned by plaintiffs; the water being conveyed from a point about fifteen rods below the spring onto Hampton's premises by means of an artificial ditch and flume, which were constructed upon plaintiffs' lands by said Hampton. In 1887 Hampton and his wife conveyed their land and their interest in and to the water of the spring, together with all ditches and right of way over and across plaintiffs' lands, to Thomas Cahoon, who at the time was one of the owners of the land on which the spring is situated. On the 21st day of January, 1888, Thomas Cahoon and Robert Robinson conveyed the property which Cahoon had purchased from Hampton and his wife, together with all the water right and right of way hereinbefore mentioned, to John D. Carnahan, who on the 18th day of July, 1889, conveyed the property, water right, and right of way to Erasmus Nagle. On September 17, 1889, Nagle, retaining the land he had thus purchased, conveyed said water right, ditches, and right of way to Thomas Cahoon and others, who at the time were the owners of the land upon which the spring, ditches, and right of way are situated. It will thus be seen that whatever rights Hampton and his wife may have acquired to the water of the spring, as well as right of way therefor, had by these various conveyances become vested in the owners of the land upon which the spring is situated and to which said easement or right of way attached. Subsequently plaintiffs became the owners of said land, to-wit, all

the north half of section 34, together with all its appurte-
nances. After the Hamptons had conveyed their land in sec-
tion 34, together with their water right in the spring, to
Thomas Cahoon, as hereinbefore stated, they continued to
use the water from the spring, but used it on what was known
as the "Kershaw and the Nagle properties." E. F. Hampton
some time in the year 1889, two years after he and his wife
had parted with their title and interest in the water of the
spring to Cahoon, undertook to sell to B. Malan, one of the
defendants herein, a one-half interest in and to the spring
water, and in 1890 Mrs. Hampton undertook to sell to said
Malan the other half interest in the spring, reserving a suffi-
cient amount or interest in the stream to supply them with
culinary water   It is conceded that Malan acquired no title
whatever by these conveyances. In 1896 he (Malan) com-
menced using the water for irrigating his lands, watering
stock, and culinary purposes, and continued so to use it until
the commencement of this action, November 18, 1902. About
five years after E. F. Hampton and his wife had sold their
property and water right mentioned to Cahoon, they moved
back on the same property and paid rent therefor to J. D.
Gill, one of the plaintiffs, who had charge of the property. On
this point Gill testified as follows: "I have collected rent
from them [referring to the Hamptons] in 1894 and 1895."
And, continuing, he further testified, referring to the water:
"They paid me rent on it for using it on the Nagle property."
Mrs. Hampton, one of the defendants, testified in part as fol-
lows: "Six years ago [1897] I was living where I am now
living. At that time we left the property because we were
ordered to do so by Mr. Gill. He said that he had rented
the place, and he wanted us to pay him higher rent, and we
offered to pay him higher rent, but he wouldn't do it.
This is the property referred to in the trial as the Nagle
property. . . . We continued to live there until about
six years ago [1897,] and paid rent for premises and used the
the water." The water from this spring varied in quantity
from about one-twelfth to one-fifth of one second foot. Be-
fore it was diverted by Hampton in 1884 it flowed down a

low depression in the ground into the main channel of Taylor's Canyon, and mingled with the waters of said canyon. Hampton, however, diverted the water of the spring at a point above where it emptied into the Taylor's Canyon water. In 1901 defendants laid a pipe line from their premises to the spring, since which time the water has been piped to the premises of the respective defendants a distance of about a mile. All of the plaintiffs reside in the state of Massachusetts, and it does not appear that any of them knew or had any information whatever, prior to 1896 or 1897 that the defendants, or any of them, were using the water under a claim of right so to do. J. D. Gill, one of the plaintiffs, who lived in Ogden several years prior to the year 1897, and who had charge of the property on which the Hamptons were residing, testified that he had some trouble in collecting rent from them in 1895 and threatened to turn the water from them, and that Hampton paid the rent on the property he was occupying and agreed to pay rent for the use of the water. His testimony respecting rent for the water was denied by Mrs. Hampton. He further testified, and his testimony on this point is not denied that at times during the year 1896, and again in 1897, he broke the water course and forbade Hampton, interfering with or using it.

The court, among other things, found: "That in the year 1887 the said Edaly F. Hampton and said wife, the defendant Emma Hampton, sold and quitclaimed to the grantors and predecessors in interest of the plaintiffs all their right, title, and interest in and to the waters of said spring and the use thereof, and all waterways and ditches on plaintiffs' lands by means of which the same had been conducted but the said water was never used by the plaintiffs or their predecessors in interest for any beneficial purposes, or used at all by them, and the waters of said springs were abandoned by plaintiffs, although flowing in said ditch; . . . and in the year 1890 the defendant Emma Hampton appropriated and begun to use said abandoned, unused, and unappropriated waters, through said artificial ditch, for the irrigation of certain lands then rented and occupied by herself and husband

. . . for the growing of crops thereon, . . . and from said date until about the year 1893 continued to so use the same, in which latter year the said defendant Emma Hampton and her husband vacated the said property so rented and occupied by them. That in the year 1896 the defendant Bartholomew Malan appropriated, used, and diverted said water to and upon his said lands for the purpose of irrigating the same." The court also found that "the said defendants, respectively, and their predecessors in interest, ever since the year 1890, have continuously, uninterruptedly, exclusively, and adversely, under a claim of right so to do, appropriated and used . . . all the water of said springs for irrigating their respective lands, and for culinary and domestic purposes." The court further found that "the defendant Bartholomew Malan had wrongfully and without permission of plaintiffs entered upon the said lands of the plaintiffs, and removed therefrom quantities of valuable rock and limestone, aggregating in value the sum of $40, to plaintiffs' damage in said sum of $40." Judgment was entered in favor of plaintiff for $40, the value of the rock mentioned, but the defendants were adjudged to be the owners of the stream of water in question, and to have acquired an easement over plaintiffs' lands in section 35 for a right of way for an open channel and ditch with which to convey the waters of said spring onto their lands in said section 34. Plaintiffs appeal.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Plaintiffs contend that the water of this spring was not subject to appropriation at the time it is claimed the appropriations were made by the defendants, and that the findings of the court, wherein it is held that the water had been abandoned by plaintiffs and was subject to appropriation, are erroneous and not supported by the evidence in the case. Defendants base their claim to the water in question upon the alleged appropriation made by Edaly F. Hampton and his wife, Emma Hampton, in the year 1891, and a further al-

leged appropriation made by Bartholomew Malan in 1896. The evidence shows, and the court found, that the plaintiffs' grantors and predecessors in interest, who were the owners of the land upon which the spring rises, and the year 1887 purchased whatever right and interest Edaly F. Hampton and his wife, Emma Hampton, may have acquired in and to the water of the spring, and all ditches and flumes constructed and used by them for conveying the water from the spring to their respective premises, together with all easements and rights of way which they may have acquired for the maintenance of said ditches and flumes. After the Hamptons had thus parted with their title and interest in and to the water, it continued to flow along and through the artificial water course which had passed to the owners (plaintiffs' grantors) of the land upon which the spring is situated and which was a part of the freehold. The water was not, therefore, subject to appropriation, unless abandoned by the owners thereof, of which there is not a scintilla of evidence, except that neither plaintiffs nor their grantors made any use of the water and permitted it to continue to flow through the artificial water course referred to onto the premises of the respective defendants, which fact is not sufficient of itself to constitute abandonment, especially in view of the fact that the entire course and conduct of plaintiffs and their grantors tends to show that they had no intention of abandoning or relinquishing their rights to the water. (*Promontory Ranch Co. v. Argile*, 28 Utah 398, 79 Pac. 47.) For the record shows that plaintiffs' grantors on September 17, 1887, purchased from the grantees of E. F. Hampton and his wife the water right and water course in question, and paid therefor the sum of $1,000, and when plaintiffs were informed that defendants had extended the pipe line to the spring, with the intention of permanently using the water under claim of right so to do, plaintiffs at once, within the course of a week or ten days, commenced an action to restrain defendants from maintaining the pipe line and to establish their (plaintiffs') title to the water. Besides, the undisputed evidence in the case shows that J. D. Gill, acting for himself and co-owners, plaintiffs

herein, in 1896 and 1897 broke the water course in question and diverted the water therefrom, so that it flowed down the old channels and sank before it passed beyond plaintiff's lands, and he (Gill) forbade E. F. Hampton from interfering with or using the water. And the record further shows that during the years 1894, 1895, 1896, and a part of 1897, E. F. Hampton and his wife were occupying the Nagle property, and using thereon the water in controversy, as the tenants of J. D. Gill, one of the plaintiffs to this action; and the rule is elementary that a tenant cannot acquire title to property occupied by him as such tenant by adverse possession. This doctrine is so well settled that we deem it unnecessary to cite authorities in support of it.

It is conceded that Malan, the other defendant, first commenced using the water in 1896, and that the inception of his alleged right to its use dates from that time. Therefore, even though it were conceded, as contended for by defendants, that title to the water in controversy could under the facts as presented here be acquired by seven years' adverse use of the same, a question not necessary here to decide, the plaintiffs would have to prevail, for the record conclusively shows that Malan had not used the water adversely or otherwise for that length of time.

The cause is remanded, with directions to the trial court to vacate and set aside that portion of the findings and decree wherein it is held that the waters of the spring were abandoned by the plaintiffs and appropriated by defendants and used by them adversely under a claim of right so to do; and the trial court is further directed to make findings on these issues in favor of plaintiffs and enter a decree in accordance therewith. The costs of this appeal to be taxed against respondents.

BARTCH, C. J., and STRAUP, J., concur.