WILLIAM H. KLAIR and IRVING J. HOLLINGSWORTH, trading as KLAIR & HOLLINGSWORTH, *vs.* PHILADELPHIA, BALTIMORE and WASHINGTON RAILROAD COMPANY, a corporation of the State of Delaware.

1. EVIDENCE—DOCUMENTARY EVIIDENCE—SUBPOENA DUCES TECUM— WHEN IMPROPER.
    Plaintiffs were not entitled to production of defendant corporation's papers by subpoena *duces tecum* against the corporation's employe.
2. PRINCIPAL AND AGENT—POWER OF ATTORNEY—DURATION OF AUTHORITY.
    That a power of attorney, dated March 21, 1904, to make live stock shipment contracts, remained with the carrier when contracts were made in October and November, 1906, by the donees, *prima facie* shows that it was in force then.

3.   CARRIERS—LIVE STOCK—SHIPMENT CONTRACTS—CONSIGNOR'S AUTHOR-
ITY.
    A live stock consignor is presumptively authorized to bind the con-
signee by the shipment contract.

4.   CARRIERS—LIVE STOCK—LIABILITY OF CARRIER.
    A carrier of live stock is not liable for injury resulting from inherent
vice or natural propensity of the animals, if he used that care which their
nature requires.

5.   CARRIERS—LIVE STOCK—LIMITATION OF LIABILITY—VALIDITY.
    A live stock shipment contract, limiting the carrier's liability to a fixed
amount in consideration of a low freight rate, is not invalid as an attempt
to limit the carrier's common-law liability, against public policy.

6.   CARRIERS—LIVE STOCK—CLAIMS FOR INJURY—VALIDITY OF REQUIRE-
MENT.
    A shipment contract, requiring written claim for injury to live stock to
be given within five days of unloading, is reasonable and valid.

7.   CARRIERS—LIVE STOCK—SHIPMENT CONTRACTS—VALIDITY.
    A provision in a live stock shipment contract that the carrier should
not be liable for injury caused by overloading, crowding, kicking, goring,
suffocating, frightening, fire, heat, cold, delay, etc., if intended to release the
carrier's liability for its own negligence, is void.

8.   DEBT, ACTION OF—ASSUMPSIT, ACTION OF—ACTION ON THE CASE—
GENERAL ISSUE—EVIDENCE ADMISSIBLE UNDER.
    In actions of debt on simple contract of assumpsit, and of trespass on
the case, the general issue puts the whole declaration in issue, and permits
almost anything to be given in evidence which shows that plaintiff never had
cause of action.

9.   PAYMENT—RELEASE—PLEADING—ACCORD AND SATISFACTION—LIMITA-
TION OF ACTIONS—DEFENSES—NECESSITY FOR PLEADING SPECIALLY.
    Matters in discharge of an obligation at one time complete and enforce-
able, such as payment, release, set-off, accord and satisfaction, limitations,
and matters arising since the suit was brought, must be specially pleaded.

10.   CARRIER'S—LIVE STOCK—ACTION FOR INJURIES—GENERAL ISSUE—EVI-
DENCE ADMISSIBLE UNDER.
    Under the general issue, a carrier of live stock, sued for injury thereto,
could show contracts limiting or avoiding liability.

11.   EVIDENCE—ADMISSIONS—PREDICATE—NECESSITY.
    One's admission is admissible against him, without laying legal grounds
for contradicting him.

12.   EVIDENCE—DECLARATIONS BY AGENT—ADMISSIBILITY.
    Generally an agent's declaration is admissible against his principal only
when made in performing an act within the scope of his authority.

13.   EVIDENCE—DECLARATIONS BY AGENT—ADMISSIBILITY.
    Declarations by an agent, authorized to buy and sell live stock, made
several days after a sale of particular stock, was inadmissible against his
principal; but a declaration made about one-half hour after the sale, while
settlement was being made by the various purchasers, was admissible.

14.   CARRIERS—LIVE STOCK—LIMITATION OF LIABILITY.
    A carrier of live stock in consideration of a reduced freight rate, can
limit its liability to a fair valuation, agreed upon at the time of shipment.

15.   CARRIERS—LIVE STOCK—SHIPPING CONTRACT—VALIDITY.
    A reasonable stipulation, requiring proof of loss of damage to a live
stock shipment to be given the carrier within a certain time and in a certain
way, is valid.

16. ACTION—NATURE AND FORM—CONTRACT OR TORT.

Existence of a live stock shipment contract does not preclude an action in tort by the consignee for injury to the shipment.

17. CARRIERS—LIVE STOCK—LIABILITY FOR NEGLIGENCE.

A contract exempting a carrier's liability for its own negligence or that of its employes is void, as against public policy.

18. CARRIERS—LIVE STOCK—ACTION FOR INJURIES—VARIANCE.

That plaintiff sued a carrier for injury to live stock, and that proof under the carrier's claim of limitation of liability to a fixed amount and a requirement for notice of a claim for damages showed existence of the contract for the shipment, does not show variance.

19. PLEADING—VARIANCE.

A defendant cannot avil himself of his own evidence upon which to base a claim of variance.

20. CARRIERS—LIABILITY—SCOPE.

A common carrier must use strictest care and deliver safely at the destination; he being regarded as an insurer, excusable from liability only for an act of God or public enemies.

21. NEGLIGENCE—"ACT OF GOD."

An "act of God" is such accident as cannot be prevented by human care, skill, or foresight, and results from natural causes such as lightning, floods, etc.

22. CARRIERS—LIVE STOCK—NOTICE OF CLAIM—FAILURE TO GIVE—
BURDEN OF PROOF.

The burden is on a carrier of live stock to show failure to give notice of a claim for loss or damage as required by the shipment contract.

23. CARRIERS—LIVE STOCK—NOTICE OF CLAIM—WAIVER—JURY QUES-
TION.

Whether a live stock carrier waived notice of claim of damage *held*, under the evidence, a jury question.

24. CARRIERS—LIVE STOCK—NOTICE OF CLAIM—WAIVER.

A carrier's waiver of a notice of claim for loss or damage can be proved by or inferred from its acts and conduct, or those of its duly authorized agents.

25. CARRIERS—LIVE STOCK—NOTICE OF CLAIM.

The object of a provision in a live stock shipment contract requiring notice of claim for loss or damage within a certain time after arrival of the shipment is to enable the carrier, while the occurrence is recent, to better inform himself as to the facts concerning the loss or injury.

26. CARRIERS—LIVE STOCK—NOTICE OF CLAIM—WAIVER.

In determining whether a live stock carrier waived notice of claim for damage as required by the shipment contract, the jury can consider complaints by the consignee's agent to the carrier's local freight agents, and what was said and done between such persons when the cattle were delivered, as well as subsequent letters written by the consignee to the carrier's officers, and any reply thereto.

27. CARRIERS—LIVE STOCK—INJURY—NEGLIGENCE—BURDEN OF PROOF.

One suing for negligent injury to a live stock shipment has the burden of showing negligence.

28. NEGLIGENCE—NATURE AND ELEMENTS.

Negligence is the want of reasonable care, or a failure to use such care as an ordinarily careful man would use in like circumstances.

29. CARRIERS—LIVE STOCK—NEGLIGENCE OF CONNECTING CARRIERS—
LIABILITY.

A live stock carrier was not liable for injury or damage caused by negligence of a connecting carrier.

30. CARRIERS—LIVE STOCK—NEGLIGENCE—CONNECTING CARRIER—BURDEN OF PROOF.

The last carrier of a live stock shipment has the burden of showing that negligence shown did not occur on its line.

31. EVIDENCE—WEIGHT—CONFLICTING TESTIMONY.

The jury must reconcile conflicting testimony, if possible, and, if they cannot, they should give credit to the most reliable under all the circumstances disclosed by the evidence.

32. CARRIERS—LIVE STOCK—INJURY—LIABILITY.

If a carrier or its employes were negligent in loading, overloading, handling, feeding, or watering live stock, and waived notice of a claim for damages therefor, required by the shipment contract, the consignee can recover for injury to the stock from such negligence.

33. CARRIERS—LIVE STOCK—INJURY—MEASURE OF DAMAGE.

The measure of damage for negligent injury to live stock in transit is the difference between their value as damaged and what it would have been if delivered in good order, with interest from the date of delivery of the stock by the carrier, subject to valuation agreed upon in the shipment contract.

34. TRIAL—DELIBERATIONS OF JURY—MATTERS TO BE CONSIDERED.

A jury's conclusion must be guided wholly by the evidence produced and the law as stated by the court.

(*December* 12, 1910.)

Judges BOYCE and HASTINGS sitting.

*Lilburne Chandler* and *J. Frank Ball* for plaintiffs.

*Andrew C. Gray* and *John F. Neary* (of *Ward, Gray* and *Neary*) for defendant

Superior Court, New Castle County, November Term, 1910.

Action on the case to recover damages alleged to have been sustained by the plaintiffs to certain shipments of cattle from Chicago, while being transported over the defendant's line of railroad to Price's, Millington, Barclay, and Centreville, in the State of Maryland. The damage complained of was alleged to have been caused by improperly caring for and handling said cattle while in transit to said destinations. The facts are sufficiently stated in the charge to the jury.

At the trial, the plaintiffs having summoned an employee of the defendant company *duces tecum*, upon the appearance of said employee in court as a witness, and before he was called to testify, counsel for plaintiff requested the witness to deliver to him the papers which he had been instructed to bring under the *duces tecum*, which request was complied with by the witness. The fact that the papers had been delivered coming to the knowledge of

counsel for defendant, he brought the matter to the attention of the court and insisted that counsel for plaintiffs was not entitled to the papers in question to the exclusion of counsel for the defendant, and contended that the papers should remain in possession of the witness until he should be called to the stand.

HASTINGS, J.:—Upon reference to *Woolley on Delaware Practice*, at *section* 573, under the head of "Subpoena *Duces Tecum*," we find this: "A subpoena *duces tecum* is a writ or process of the same kind as the subpoena *ad testificandum*, issued for the same purpose and an additional purpose of requiring the witness to bring with him and produce to the Court books, papers or things, in his hands, tending to elucidate the matter in issue. This is the only method in most cases of obtaining the production of a document in the hands of a person not a party to the action, and it is applicable only to those who are not parties to the action. The production of documents in the possession of the adverse party cannot be compelled under a subpoena *duces tecum*. The right of one party to compel a production of documents held by the other party is a right, not of course, but subject to be contested, depending upon considerations to be inquired of, and decided by the Court before an order for production will be made."

We would also call your attention to *sections* 334 and 339, which embody a very similar discussion of these matters in this state. Under that authority you cannot get these papers by that method.

*Mr.. Neary*:—My application is to have these papers returned to the witness.

HASTINGS, J.:—We think, Judge Ball, that that ought to be done.

When the plaintiffs had closed, defendants offered in evidence certain contracts made with the consignors covering said shipments, said contracts being signed by a person authorized by the consignors to make the same under a power of attorney.

Said power of attorney was also offered in evidence in connection with the said contracts. All these papers were objected to,

**25 Del.]** Klair & Hollingsworth vs. P., B. & W. R. R.    279

Opinion.

by counsel for plaintiffs. After hearing an extended argument, the court delivered the following opinion which states the facts and contentions of the respective counsel:

Hastings, J., delivering the opinion of the court:

Counsel for the defendant have offered in evidence certain papers which have been marked "Defendant's Exhibits, 1, 2, 3, 4, and 5," and objection has been made to their admission.

Exhibit 1 is as follows:

"To the Pennsylvania Company and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company.

"We, the undersigned, hereby authorize and empower E. A. Rogers, W. C. Coughlin, C. M. Leslie, F. J. Hayden, for us and in our name to make and execute any and all live stock contracts of any character whatsoever covering any shipment of live stock by us, as fully and amply, and with the same effect as if the said contracts had been made by us personally, hereby ratifying and confirming all that our said agent shall lawfully do in the premises by virtue hereof.

"Witness our hands and seals this 21st day of March, 1904.
"[Signed]                                   Huffman & Stuart,
                                               "J. E. Stuart."

Exhibits 2, 3, 4, and 5, purport to be contracts entered into by the said Huffman & Stuart for shipments of live stock, from the Union Stockyards, Illinois, to Price's, Millington, Barclay, and Centreville, in the State of Maryland. These papers are identical except as to dates, place of destination and the name of the shipper's agent, which in two of them is C. M. Leslie, and in the other two is F. J. Hayden. In order that this opinion may be the more intelligible, we quote one of said contracts, which is as follows:

"Pennsylvania Company,
Uniform Live Stock Contract.
Union Stock Yards, Ill., Station,

| W. B. No. |
| 436 |

Oct. 15, 1906.

"This Agreement, made this Oct. 15, 1906, day of Oct. 15,

1906, by and between the Pennsylvania Company, hereinafter called the carrier, and Huffman & Stuart, hereinafter called the shipper:

"Witnesseth: That the said shipper has delivered to the said carrier live stock of the kind and number, and consigned and destined by said shipper, as follows:

| Consignee, Destination, etc. | Number and Description of Stock. | Weight, Subject to Correction. |
|---|---|---|
| Klair & H. | 53 Cattle | 22400 |
| Millington, Md. Charges Advanced, $1.00. Car Nos. and Initials, Streets 571. | | |

for transportation, from *Union Stockyards, Ill.*, to destination, if on said carrier's line of railway, otherwise to the place where said live stock is to be received by the connecting carriers for transportation to or toward destination, and that the same has been received by said carrier for itself and on behalf of connecting carriers, for transportation, subject to the official tariffs, classifications and rules of the said company, and upon the following terms and conditions, which are admitted and accepted by the said shipper as just and reasonable, viz.:

"That said shipper, or the consignee, is to pay freight thereon to the said carrier at the rate of *tariff* per *cwt.*, which is the lower published tariff rate based upon the express condition that the carrier assumes liability on the said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation of the said animals, and beyond which valuation neither the said carrier, nor any connecting carrier shall be liable in any event, whether the loss or damage occur through the negligence of the said carrier or connecting carriers or their employes, or otherwise:

If horses or mules—not exceeding one hundred dollars each.

If cattle or cows—not exceeding seventy-five dollars each.

If fat hogs or fat calves—not exceeding fifteen dollars each.

If sheep, lambs, stock hogs, stock calves, or other small animals—
not exceeding five dollars each,

and in no event shall the carrier's liability exceed twelve hundred dollars upon any car load.

"That said shipper is to pay all back charges, and freight paid by said carrier or connecting carrier upon or for the transportation of said live stock.

"That the said shipper is at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

"That the said shipper is to inspect the body of the car or cars in which said stock is to be transported, and satisfy himself that they are sufficient and safe, and in proper order and condition, and said carrier or any connecting carrier shall not be liable on account of any loss of or injury to said stock happening by reason of any alleged insufficiency in or defective condition of the body of said car or cars.

"That said shipper shall see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars.

"The said carrier or any connecting carrier shall not be liable for or on account of any injury sustained by said live stock occasioned by any or either of the following causes, to wit: Overloading, crowding one upon another, kicking or goring, suffocating, fright, burning of hay or straw or other material used for feeding or bedding, or by fire from any cause whatever, or by heat, cold or by changes in weather, or for delay caused by stress of weather, by obstruction of track, by riots, strikes or stoppage of labor, or for causes beyond their control.

"That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier, or its employees, or its connecting carriers or their employees, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby, the amount actually expended by said shipper, in the purchase of food and water for the said stock while so detained. That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the *local freight* agent of said carrier at his office in *Millington, Md.*, within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs.

"That whenever the person or persons accompanying said stock under this contract, to take care of the same, shall leave the caboose and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause, and neither the said carrier, nor its connecting carriers, shall be required to stop or start their trains or caboose cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock to take care of the same under this contract.

"And it is further agreed by said shipper, that in consideration of the premises and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers without charge, other than the sum paid or to be paid for the transportation of the live stock, in his or their charge, that the said shipper shall and will indemnify and save harmless said carrier, and every connecting carrier, from all claims, liabilities and demands of every kind, nature and description, by reason of personal injury sustained by said person or persons so in charge

of said stock, whether the same be caused by the negligence of said carrier or any connecting carrier, or any of its or their employees, or otherwise.

"And *they* do herby acknowledge that *they* had the option of shipping the above described live stock at a higher rate of freight according to the official tariffs, classifications and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railway and transportation companies, as common carriers of the said live stock, upon their respective roads and lines, but *have* voluntarily decided to ship the same under this contract at the reduced rate of freight above first mentioned.

"Pennsylvania Company,

"By E. A. Oliver, Agent.

"Witness my hand.

"Huffman & Stuart, Shipper,

"By F. J. Hayden, Shipper's Agent.

"J. McNally, Witness."

The counsel for the plaintiffs object to the admission of these papers upon the following grounds:

(1) That the paper purporting to be a power of attorney authorizing the execution of these contracts is dated March 21, 1904, while the contracts were not executed until October and November, 1906.

(2) That the shippers had no authority from the plaintiffs to execute the contracts and therefore the same cannot be binding on the plaintiffs without notice.

(3) That the contracts undertake to exempt the defendant from its common-law liability for negligence, and further to limit its common-law liability for damages to the plaintiff as a result of its negligence.

(4) That the contracts cannot be admitted in evidence under the general issue.

We will take up these objections in the order stated.

*First.* An examination of these papers shows, and it is in testimony in this case, that these contracts were executed by two

of the persons named in this power of attorney.    It is also in evidence that the said power of attorney came to the defendant in the course of its business and is still in its possession.    From these facts we think the authority to execute the contracts was at least *prima facie* in force and that such execution was authorized thereby.

*Second.*    On the question whether the consignors could enter into special contracts with the carrier which shall be binding on the consignee, Judge Cooley, in the case of *McMillan v. M. S. & N. I. R. Co.*, 16 *Mich.*, at *p.* 118, 93 *Am. Dec.* 208, said: "His authority I think is to be presumed; and the carrier is under no obligation to inquire into it."

*Hutchinson on Carriers*, at *section* 1307, says that, "In other words, the owner of the goods who, by presumption of law, makes the contract with the carrier."

We have no doubt that this states the law correctly and it is not necessary for us to further discuss it.

*Third.*    This objection is the one upon which the greater portion of the argument has been based and it is of great importance.

We will first consider what we deem to be the questions of law involved in this objection, and  secondly, what effect this law has upon the admissibility of these papers.

The responsibility placed upon the common carrier in transporting property delivered to it is qualified, when such property is live stock, to the extent that the common carrier is not responsible where injury occurs from the inherent vices or natural propensities of the animals themselves, assuming that the common carrier has exercised that degree of care which the nature of the property requires.

Can, however, the common carrier relieve itself from all liability for injury to the live stock, including its own negligence or that of its servants, by a special contract with the shipper or owner?    Or can it limit its common-law liability by a special contract for the consequences of its own negligence?

In the leading case of *Railway Co. v. Lockwood*, 17 *Wall.*

357, 21 *L. Ed.* 627, the court reached the conclusion as announced in its opinion:

"First.   That a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.

"Secondly.   That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.

"Thirdly.   That these rules apply both to carriers of goods and carriers of passengers for hire, and with special force to the latter."

In the case of *Liverpool, etc., Steamship Co. v. Phenix Ins. Co.*, 129 *U. S.* 397, 9 *Sup. Ct.* 469, 32 *L. Ed.* 788, in which the rule in the *Lockwood case* was applied, it was said: "Special contracts between the carrier and the customer, the terms of which are just and reasonable and not contrary to public policy are upheld; but the law does not allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions which are unreasonable and improper, amounting to an abrogation of the essential duties of his employment. It being against the policy of the law to allow stipulations which will relieve the railroad from the exercise of care and diligence, or which in other words will excuse it from negligence in the performance of its duty the company remains liable for such negligence."

In the case of *Hart v. Pa. R. R. Co.*, 112 *U. S.* 331, 5 *Sup. Ct.* 151, 28 *L. Ed.* 717, the Court said: "It is the law of this Court that a common carrier may by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants."

The *Lockwood case* was quoted with approval by the court.

The decisions of the United States Supreme Court are uniform upon this question, and so far as we can ascertain the same doctrine is held in nearly all the state courts, and should be applied by us in the case now on trial.

The same reasoning applies when the carrier undertakes to *limit* its common-law liability for the consequences of its own negligence or that of its servants.   Confusion sometimes arises

with respect to this principle however, because of another rule of law which is equally well settled.

Common carriers sometimes enter into a contract with the shipper that the property shall be carried for a certain amount of freight based upon an agreed valuation of the goods, or that it will be liable only to the extent of a certain sum.

The law in relation to such contracts is well stated by *Hutchinson on Carriers* at *sections* 425 and 426, as follows:

"Conditions are frequently to be found in carrier's receipts to the effect that in case of loss the carrier will be liable only to the extent of a certain sum. If the sum thus named is fixed without any regard to the real value of the goods, the limitation will be considered as an attempt by the carrier to secure a partial exemption from liability, and, in so far as its validity is concerned, it will stand on the same footing as any other condition intended to secure immunity from the consequences of negligence. By the great weight of authority, as we shall see, the carrier is not permitted to relieve himself by contract from liability for losses occasioned by his negligence. If, therefore, a loss occurs which is attributable to the carrier's negligence, a condition by which it is attempted to fix the amount recoverable at a certain sum, irrespective of the real value of the goods, cannot avail the carrier, and the owner may recover to the full extent of his actual loss. But if the loss or injury result from causes for which the carrier is in no manner responsible, a contract founded upon an adequate consideration limiting the amount recoverable to a designated sum will be valid and conclusive between the parties, and the owner will be limited in his recovery to the sum named.     *     *     *

"The rule is well settled that the carrier, in order that he may exercise a degree of care and attention commensurate with the risk assumed, is entitled to be informed of the value of the goods intrusted to him for transportation. For the purpose, therefore, of securing such information and of establishing a basis upon which to compute his charges, the carrier may, by a contract fairly and honestly entered into with the owner of the goods, stipulate either that the goods are of a certain value, or that their value does not exceed a certain sum and that, in the event of loss,

his liability shall not exceed the sum at which the goods are valued; and when fairly entered into with a view to placing a *bona fide* value on the goods, the contract will be conclusive on the owner, and the carrier will not be liable for a greater sum than that at which the goods are valued although his own misconduct has caused their loss."   *   *   *

The doctrine in the last-quoted paragraph is supported by authority in our own state in the case of *Klair v. Wilmington Steamboat Co.*, 4 *Penn.* 51, 54 *Atl.* 694, in which the court said:

"The ordinary rule controlling the subject of damages, in case the article is lost, destroyed or injured during transportation, is the value of the article so lost, destroyed or injured. If, however, there is a rule of the defendant company, of which the defendant had notice when he shipped the goods, that the liability of the company was fixed by the rate of freight paid, and that for the purpose of obtaining a certain rate of freight he reported to the company a value of the goods, thereby limiting as it were by tacit agreement, the liability to such a sum as was named by him, that would be the amount of the liability of the company."   *   *   *

In the case of *Carpenter v. B. & O. R. R.*, 6 *Penn.* 15, 64 *Atl.* 252, the court said:

"Where there is a contract fairly made between the shipper and common carrier, whereby, in consideration of a reduced rate of freight, it is agreed that, in case of loss or injury, the carrier shall be liable only to the extent of an agreed valuation of the goods, such contract is valid and will operate as a limitation upon the liability of the carrier."   *   *   *

There are certain provisions and stipulations in the contracts in question which have no application to the facts in this case. Counsel for the defendant concedes that the only provisions of these contracts which are at all relevant to this case are: (1) The one with respect to the valuation of the goods; (2) the one requiring notice of claim of damage; (3) that the goods are shipped at a reduced rate because of the contract; and (4) that the defendant shall not be liable for injury to the cattle occasioned by "overloading, crowding one upon another, kicking or goring,"

etc., and do insist that all of the provisions just mentioned are pertinent and admissible.

The case of *Hart v. Pa. R. R. Co.*, 112 *U. S.* 331, 5 *Sup. Ct.* 151, 28 *L. Ed.* 717, *supra*, was an action for the recovery of the value of a horse killed in transit. The shipper had entered into a special contract with the defendant, one provision of which is almost identical with a provision in the contracts offered here. The case is therefore very important in determining the question now before us. We quote from the contract in that case as follows:

"Jersey City Station, P. R. R.,

"——, 187—.

"Lawrence Hart delivered into safe and suitable cars of the Pennsylvania Railroad Company, numbered M. L. 224, for transportation from Jersey City to St. Louis, Mo., live stock, of the kind, as follows: one (1) car, five horses, shipper's count, which has been received by said company for themselves and on behalf of connecting carriers, for transportation, upon the following terms and conditions, which are admitted and accepted by me as just and reasonable:

"First. To pay freight thereon to said company at the rate of ninety-four (94) cents per one hundred pounds (company's weight), and all back freight and charges paid by them, on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation:

"If horses or mules, not exceeding two hundred dollars each.

"If cattle or cows, not exceeding seventy-five dollars each.

"If fat hogs or fat calves, not exceeding fifteen dollars each.

"If sheep, lambs, stock hogs, or stock calves, not exceeding five dollars each.

"If a chartered car, on the stock and contents in same, twelve hundred dollars for the car load."

The court in delivering its opinion said: "It is contended for the plaintiff that the bill of lading does not purport to limit the liability of the defendant to the amounts stated in it, in the event of loss through the negligence of the defendant. But we are of opinion that the contract is not susceptible of that construction.

The defendant receives the property for transporation on the terms and conditions expressed, which the plaintiff accepts 'as just and reasonable.'   The first paragraph of the contract is that the plaintiff is to pay the rate of freight expressed, 'on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses or mules, not exceeding two hundred dollars each.   *   *   *   If a chartered car, on the stock and contents in same, twelve hundred dollars for the car load.'   *   *   *

"It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes a liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation.   Especially is this so, as the bill of lading is what its heading states it to be, 'a limited liability live stock contract,' and is confined to live stock.   Although the horses, being race horses, may, aside from the bill of lading, have been of greater real value than that specified in it, whatever passed between the parties before the bill of lading was signed was merged in the valuation it fixed; and it is not asserted that the plaintiff named any value, greater or less, otherwise than as he assented to the value named in the bill of lading, by signing it.   The presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged.   The rate of freight is indissolubly bound up with the valuation.   If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed.·   If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation.   The plaintiff cannot claim a higher valuation, on the agreed rate of freight.

"It is further contended by the plaintiff, that the defendant was forbidden, by public policy, to fix a limit for its liability for a loss by negligence, at an amount less than the actual loss by such negligence.   As a minor proposition, a distinction is sought to

Opinion.

be drawn between a case where a shipper, on requirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said, that, while in the former case the shipper may be confined to the value so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further." * * *

In the contracts before us the amounts fixed beyond which the defendant should not be held liable was an "agreed valuation," and therefore it was not an attempt to limit the common-law liability of the defendant in contravention of public policy, and such provision is admissible.

The law with respect to the carrier limiting the time within which claim shall be made for loss is well expressed by *Hutchinson on Carriers*, at *section* 442, as follows:

"It is frequently the custom for the carrier to insert in the contract of shipment a condition that, in the event of loss, the owner shall give notice of his claim within a specified time. Such conditions are usually to the effect that the notice shall be in writing and presented to some officer or agent of the carrier, either before the goods are removed from the point of destination or within a certain time thereafter, or within a designated time after the loss has occurred; and when such conditions are reasonable, the owner will be precluded from the right to maintain an action against the carrier unless he has presented the notice within the time stated and in the manner provided. The object of conditions of this character, it is said, is to enable the carrier, while the occurrence is recent, to better inform himself of what the actual facts occasioning the loss or injury were, and thus protect himself against claims which might be made upon him after such a lapse of time as to frequently make it difficult, if not impossible, for him to ascertain their truth. It is just, therefore, that

the owner, when a loss or injury has occurred, should be required, as a condition precedent to enforcing the carrier's liability, to give notice of his claim according to the reasonable conditions of the contract."

Whether or not such a provision of a contract will be enforced depends upon whether it is a reasonable requirement under the facts and circumstances of the particular case. We think under the facts shown in this case this provision of the contract is admissible. These two provisions of the contracts being admissible, the admissibility of the third, relating to the higher rate, is also admissible.

With respect to the fourth provision concerning the overloading, etc., which the counsel for the defendant contend is relevant, we are in some doubt. We think it is uncertain whether such provision is based upon the assumption that an attendant would accompany the stock, or whether it is an attempt to relieve the defendant of its own negligence. If it is intended to apply where an attendant accompanies the stock, it would not be admissible because from the evidence in this case there was no such attendant. If it is intended to relieve the defendant of its own negligence it would be void and not admissible. Therefore we think it should be excluded. We think the rights of the parties respecting the matters covered by this provision are fixed by the common-law rule of liability, and such rights can be dealt with in the charge to the jury, and the provision of the contract ought not therefore to be admitted.

We have no doubt but that certain provisions of these contracts may be admitted and others rejected. We think that the consideration contained in the contracts sufficiently support each of the provisions thereof.

*Fourth.* This objection goes to the admissibility of the proffered contracts, under the general issue. While counsel for the plaintiffs contend that they cannot be given in evidence under the general issue, and in order to be admissible, in any event, should have been pleaded specially, they presented no authorities in support of this contention, and contented themselves with the mere objection as stated. The rule applicable to the question

raised is this; in actions of debt on simple contract, in actions of assumpsit, and in actions of trespass on the case, the general issue puts the whole declaration in issue, and under the general issue almost anything may be given in evidence which shows that the plaintiff never had a cause of action, and almost everything which shows at the time of the commencement of the suit he had no cause of action. *Reading's Heirs v. State*, 1 *Harr*. 190; *Phleger v. Ivins*, 5 *Harr*. 118; *Collins v. Bilderback*, 5 *Harr*. 133; *Stephens on Plead.* § 162 (note); 1 *Chitty on Plead.* § 491. But matters in discharge of an obligation at one time complete and capable of being enforced, such as payment, release, set-off, accord and satisfaction, the statute of limitations and matters which have arisen since suit brought, must be specially pleaded. 1 *Woolley Del. Prac.* §§ 474, 1513.

It is the opinion of the court that the contracts in question may be given in evidence under the general issue in an action of this character.

We therefore admit "Exhibit No. 1" as a whole. We admit "Exhibits 2, 3, 4, and 5" partially, that is, so much of the latter exhibits as refer to the agreed valuation of the goods; to notice of claim for damages and to giving the owner the option of shipping at a higher rate of freight. We exclude the other provisions, contained in the latter exhibits.

*Alfred C. Hayden*, agent of the defendant company at Barclay, Maryland, and a witness for the defendant, was asked by counsel for defendant the following question:

Q. What statement did Dougherty make to you with reference to this shipment of October 9th, on October 22d or 23d, in the presence of J. W. McKenny, in the waiting room next to your office at Barclay, Maryland ?

(Objected to by counsel for plaintiffs, because there had been no ground laid to contradict the witness. Counsel for defendant contended that the said question was admissible as an admission against interest, the witness being an agent of the plaintiffs.)

HASTINGS, J., delivering the opinion of the court:

This question has been objected to, as we understand, upon two grounds; the first is that a conversation had between th

present witness and the witness Dougherty could not be admitted without first laying the legal grounds for contradiction; and secondly, that while the witness Dougherty was the agent of the plaintiffs yet he was not such an agent as was clothed with authority to speak in this particular transaction so as to bind the plaintiffs.

As to the first proposition, we find that the party's own admission whenever made may be given in evidence against him. And this may be done whether his attention has been called to it before or not, or as is usually said, without laying the legal grounds for it.

As to the other objection, the general rule is that the authority to make an admission is not necessarily to be implied from the authority previously given in respect to the thing to which the admission relates. The general principle is that the admission must be made while the agent is performing some act which is in the scope of his authority and in reference to the act which is being done. *Greenleaf on Evidence*, §§ 113, 114.

While it is in evidence in this case that Dougherty was the agent for these plaintiffs, and had been such for a long time, for the purpose of selling cattle and buying stock of all kinds, and had very full authority in that transaction, yet this particular load of cattle was delivered on the ninth of October and the sale was had some three or four days afterwards; this conversation now inquired about was had on the twenty-second or twenty-third of October, many days after the sale, and after this transaction had been entirely closed. Therefore we do not think that any admission that he made at that time would be binding upon these plaintiffs. We therefore sustain the objection.

(Subsequently another witness of the defendant was asked, by defendant's counsel, to state a certain conversation he had with the witness Dougherty concerning the sale of the plaintiffs' cattle at Millington, Maryland, about a half-hour after the sale, and while settlement was being made for the cattle by the various purchasers. This was objected to by counsel for plaintiffs upon the same grounds as urged against the admission of the previous question.)

Opinion—Prayers.

HASTINGS, J.:— We think this question is different from the one we have already ruled upon, in this respect: We refused to admit the question asked the witness Hayden, because it was after the transaction had been entirely closed with respect to the sale of the cattle. This question which is now objected to refers to the conversation that took place while this agent was still in the performance of his duty with respect to that particular car load of cattle. We think it is part of the *res gestae*. Of course we don't know whether this answer is going to be material or not. If it should be immaterial, counsel for plaintiffs may move to strike it out. As it stands at present, we think it is admissible.

## PLAINTIFFS' PRAYERS.

A common carrier of goods is regarded by the common law in the light of an insurer; and in case the goods are injured, lost or destroyed, nothing will excuse or discharge him, but the act of God, or of the public enemies, subject to certain qualifications as, for example, the carrier is not held responsible for loss or injury occasioned by bad or imperfect packing or through carelessness or negligence of the shipper, or for ordinary wear and tear and chafing of the goods in the course of their transportation, or for their ordinary loss or deterioration in quantity or quality, or for any inherent, natural infirmity or tendency to damage, depreciation or decay.

This rule has been spoken of as severe and rigorous; but lik, most of the principles of the common law, it is founded in wisdome and dictated by sound policy. The exigencies of society require the adoption of the rule. Men engaged in the various business transactions of life, are obliged from necessity to intrust common carriers with their goods. If such carriers are to be excused from all loss, destruction of, or injury to goods, in case it be shown that they have used due care, precaution, or attention, the party employing them, could never show the want of such care, unless he had an agent to accompany his goods during the whole time occupied in their transportation. The carrier might at all times by fraud and collusion, or by means of his own agents or servants, throw the burden of proof upon the owner or consignee of goods,

Prayers

by making out a statement of facts, which although untrue in itself, would show the exercise of ordinary care and diligence. *Flinn v. P. W. & B. R. Co.*, 1 *Houst.* 492; *McHenry v. Railroad Co.*, 4 *Harr.* 448; *Reed v. Wilmington Steamboat Co.*, 1 *Marv.* 193, 40 *Atl.* 955; *Klair & Lort v. Wilmington Steamboat Co.*, 4 *Penn.* 51, 54 *Atl.* 694.

The responsibility of a common carrier commences the moment he has received the goods for transportation, and continues until he has made due delivery of them at their place of destination.    *McHenry v. Railroad Co.*, 4 *Harr.* 450; *Pennewill v. Cullen*, 5 *Harr.* 241.

It is for the jury to inquire and determine whether the damages alleged to have been sustained by the plaintiffs, were or were not attributable to the negligence, or the want of proper vigilance and foresight under the circumstances, on the part of the agents and servants of the company.

Where the express language or evident purpose of the stipulation relieving the carrier from common-law liability is to exempt him from liability for his own negligence or that of his servants or agents, the stipulation is against public policy and is therefore void and of no effect.    *N. Y. Cent. R. Co. v. Lockwood*, 17 *Wall.* 357, 21 *L. Ed.* 627; *Michigan Southern R. Co. v. Heaton*, 37 *Ind.* 448, 10 *Am. Rep.* 89; *Wabash R. Co. v. Brown*, 152 *Ill.* 484, 39 *N. E.* 273; *Chicago R. Co. v. Chapman*, 133 *Ill.* 96, 24 *N. E.* 417, 8 *L. R. A.* 508, 23 *Am. St. Rep.* 587; *Adams Exp. Co. v. Stettaners*, 61 *Ill.* 184, 14 *Am. Rep.* 57; *Welch v. Boston R. Co.*, 41 *Conn.* 333; *Pierce v. Southern Pac. Co.*, 120 *Cal.* 156, 47 *Pac.* 874, 52 *Pac.* 302, 40 *L. R. A.* 350; *Boehl v. Chicago R. Co.*, 44 *Minn.* 191, 46 *N. W.* 333; *Chicago R. Co. v. Witty*, 32 *Neb.* 275, 49 *N. W.* 183, 29 *Am. St. Rep.* 436; *Powell v. Penn. R. Co.*, 32 *Pa. St.* 414, 75 *Am. Dec.* 564.

Should the jury believe that the cattle were injured and damaged through carelessness and negligence of the defendant company, its agents or servants, in overloading, crowding, kicking or goring, taking care of, feeding and watering whilst being transported, they should render a verdict in favor of the plaintiff notwithstanding said special contract.

Prayers.

Should the jury believe the plaintiffs were entitled to damages on account of the carelessness and negligence of the defendant company, its agents and servants, their verdict should be in favor of the plaintiffs notwithstanding the said plaintiffs had not made a claim for such loss or damage in writing, verified by the affidavit of the shipper or his agent and delivered to the local freight agent of said carrier at his office within five days from the time said stock was removed from said car or cars, because said notice as so prescribed had been waived by the defendant. *Falkenberg v. Erie Railroad Company*, 28 *Misc. Rep.* 165, 59 *N. Y. Supp.* 44; *Owen v. Louisville Railroad Company*, 87 *Ky.* 626, 9 *S. W.* 698; *Bennett v. Northern Pacific Express Company*, 12 *Or.* 49, 6 *Pac.* 160; *Cleveland E. T. C. Railroad Co. v. Heath*, 22 *Ind. App.* 47, 53 *N. E.* 198; *Wabash R. R. Co. v. Brown*, 152 *Ill.* 484, 39 *N. E.* 273; *Jennings, Administrator, v. Metropolitan Life Insurance Co.*, 148 *Mass.* 61, 18 *N. E.* 601.

If the cattle in this case were injured during transportation, under such circumstances as to render the defendant company liable, the measure of damage is the difference between the value of the goods in their damaged state and what would have been their value if delivered in good order, with interest from the date of the delivery of the cattle by the defendant to the plaintiffs.

### DEFENDANT'S PRAYERS.

That the jury return a verdict in favor of the defendant.

*First,* for the reason that the provision in the special contracts respecting notice is a condition precedent to a right of recovery. *Gill v. Malan*, 29 *Utah* 421, 82 *Pac.* 471; *Chicago & S. E. Ry. Co. v. Fifth Nat. Bank*, 26 *Ind. App.* 600, 59 *N. E.* 43; *Anderson v. Lake Shore & M. S. Ry. Co.*, 26 *Ind. App.* 196, 59 *N. E.* 396; *Louisville, N. A. & C. Ry. Co. v. Widman*, 10 *Ind. App.* 92, 37 *N. E.* 554; *Case v. Cleveland, C., C. & St. L. Ry. Co.*, 11 *Ind. App.* 517, 39 *N. E.* 426; *Houston & T. C. Ry. Co. v. Bowie's Heirs*, 2 *Tex. Civ. App.* 437, 21 *S. W.* 304; *Wichita & W. Ry. Co. v. Koch*, 47 *Kan.* 753, 28 *Pac.* 1013; *The Westminster*, 127 *Fed.* 680, 62 *C. C. A.* 406; *Baltimore & Ohio S. W. Railroad Co. v. Ross*, 105 *Ill. App.* 54.

*Second*, for the reason that a variance is shown by the proof of the special contracts between the plaintiffs and the defendant company, it appearing that this action should have been on the contracts and not in tort. *Dickerson v. Rocke*, 30 *Pa.* 390; *Lake Erie & Western Ry. Co. v. Holland*, 162 *Ind.* 406, 69 *N. E.* 138, 63 *L. R. A.* 948; *Pennsylvania Co. v. Walker*, 29 *Ind. App.* 285, 64 *N. E.* 473; *Normile v. Oregon & R. & Nav. Co.*, 41 *Ore.* 177, 69 *Pac.* 928; *Lake Shore & M. S. Ry. Co. v. Bennett*, 89 *Ind.* 457; *Hall v. Pennsylvania Co.*, 90 *Ind.* 459; *Snow v. Indiana, B. & W. R. Co.*, 109 *Ind.* 422, 9 *N. E.* 702; *Bartlett v. Pittsburgh, C. & St. L. Ry. Co.*, 94 *Ind.* 281; *Succession of Theriot*, 120 *La.* 386, 45 *South.* 287; *2 C. B. (N. S.)* 7.

Where a contract is fairly made between the shipper and the common carrier, in consideration of a reduced rate of freight, such contract is valid and will operate as a limitation upon the liability of the carrier. *Carpenter v. B. & O. R. Co.*, 6 *Penn.* 19, 64 *Atl.* 252.

The carrier is not an insurer as to time of delivery and is not liable for damage due to inherent natural infirmity or tendency to damage. *Truax v. Railroad Co.*, 3 *Houst.* 245; *Reed & Walker v. Railroad Co.*, 3 *Houst.* 206.

The carrier may, by contract, be exempt from all liability for injury, such as occurs from loading, overloading, suffocation and the like, and from the wickedness, escape or viciousness of stock. *Hutchinson on Carriers, Vol.* 1, *p.* 439, and cases cited.

The carrier may limit the time within which claim of loss must be made. *Hutchinson on Carriers, Vol.* 1, §§ 442, 443; *Cox v. Central Vermont R. Co.*, 170 *Mass.* 129, 49 *N. E.* 97; *Elliott on Railroads*, § 1512.

The conditions of the contract inure to the benefit of all connecting carriers. *Hutchinson on Carriers*, § 470.

In the absence of a special contract the carrier of live stock is not held responsible for ordinary wear and tear or for damage resulting from the nature of the animals and their capacity for inflicting injury upon themselves and upon each other. *Klair v. Wilmington Steamboat Co.*, 4 *Penn.* 54, 54 *Atl.* 694; *Moulton v.*

*Railway Co.*, 31 *Minn.* 85, 16 *N. W.* 497, 47 *Am. Rep.* 781; 1 *Hutchinson on Carriers*, § 235.

If the jury should believe from the evidence that the defendant exercised proper care in the handling of the live stock in question while the same was within its possession and control, then the jury should find for the defendant.

The defendant is not responsible for injury or damage resulting from the negligence or want of care of any of the other connecting carriers.

A carrier of live stock does not assume the common-law liability of a common carrier, consequently is liable only for its negligence in the handing of stock.   This negligence must be alleged and proven by the plaintiff in order to entitle him to recover. 29 *Mich.* 329.

HASTINGS, J., charging the jury:

Gentlemen of the jury:—This action was brought by William H. Klair and Irving J. Hollingsworth, trading as Klair and Hollingsworth, the plaintiffs, against Philadelphia, Baltimore and Washington Railroad Company, a corporation of the state of Delaware, the defendant, to recover damages for the loss of and injury to certain cattle which the defendant carried over its line of railroad for the plaintiffs in the year 1906.

It appears from the testimony in this case that four car loads of cattle, consisting of bulls and heifers, were bought in Chicago, Illinois, by Huffman and Stuart for the plaintiffs and delivered to the Pennsylvania Company for transportation, and consigned to the plaintiffs.   The first shipment was for forty-six cattle October 4, 1906, to Price's Station, Maryland; the second for fifty-three cattle October 15, 1906, to Millington, Maryland; the third for forty-three cattle to Centreville, Maryland, and forty-five cattle to Barclay, Maryland, the date of the shipment of these two cars being October 31, 1906.   It further appears that the shipper delivered the cattle to the Pennsylvania Company, which company delivered them to the defendant at Grays Ferry, Pennsylvania, and that the latter company afterward delivered them to the plaintiffs at their respective destinations.   It is conceded that

the defendant at the time these shipments were made over its line was a common carrier.

The plaintiffs allege in their declaration that the defendant in transporting the said cattle was careless and negligent, said carelessness and negligence being charged substantially as follows:

(1)   That it did not safely carry, care for, feed or convey the said cattle safely and securely and in good condition and well fed and watered deliver the same to the plaintiffs;

(2)   That it did not nor would, whilst it had the care and custody of said cattle, take due and proper care of, properly feed and water and properly exercise the same;

(3)   That it permitted said cattle to be and remain in filthy cars, untied and unfastened;

(4)   That it fed and watered the said cattle in a damp, unwholesome and unhealthy place, and

(5)   That it did overcrowd and overload the said cattle in its cars, and suffered and permitted them to be and remain during all the time of their transportation over-crowded in cars under its control.

They charge these acts of negligence with respect to each of the four shipments, and claim that as a result of such negligence the cattle were gored and injured and became and were diseased, disordered, blind, sick and lost to the plaintiffs.

The plaintiffs contend that when these cattle were delivered in Chicago for transportation they were in good, healthy condition; that the large bulls were all fastened in the cars to prevent them doing injury to the other cattle; that when the cars of cattle for Price's and Millington arrived at their destination the cars had a large quantity of manure in them, the bulls were not tied, some of the cattle were sick and weak, one was dead, others injured and that altogether they were in bad condition.   With respect to the Barclay and Centreville shipments it is contended that these cars arrived in the Wilmington yards of the defendant on Saturday, November third, and on the next day one of the plaintiffs saw them in the pen of the defendant company in Wilmington; that at that time they were in good condition, but the pen in which he saw them was covered with dirty and filthy water varying in

Charge.

depth from one to six inches, and that the cattle when he saw them were drinking this water; that they arrived at their destination the afternoon of the next day, Monday, November fifth, in bad condition, with large quantities of manure in the car, the bulls not tied, and the cattle sick, weak, etc. A part of this bad condition, it is contended, was due to the drinking of the dirty and filthy water before referred to. The plaintiffs further contend that the cattle were by reason of their bad condition greatly reduced in value.

The defendant, on the other hand, contends that it was guilty of no negligence in moving or caring for these several loads of cattle; that they were moved promptly after they were received by it; that no accident happened to the trains moving the said cattle; that the cattle were in good condition when received from the connecting line and were delivered to the plaintiffs in the same condition.

With respect to the Barclay and Centreville shipments, the defendant contends that they were received in Wilmington on Saturday too late to make connections with the regular freight train to points of destination, but that they were properly fed, watered and cared for on that and the following day, while in the City of Wilimington, and on Monday the following day were properly delvered. The defendant further contends that all of these cattle were, when delivered, in as good condition as could reasonably be expected considering the distance of the point from which they had been shipped. It is also contended by the defendant that the plaintiffs, by their agents, entered into a contract with the original carrier of these cattle by which they agreed that any claim for loss or injury to the cattle should be in writing, sworn to and delivered to the local freight agents at the points of destination within five days after the cattle were delivered; that no such notice was given, that the defendant has not waived its rights thereunder. That the defendant for these reasons is entitled to a verdict in its favor.

These, gentlemen of the jury, briefly stated are the contentions of the parties to this action.

We have been asked by counsel for defendant to instruct you

to return a verdict for the defendant. They make this request upon two grounds: First, that there is a variance in the allegations and proof; and, second, that by the contract admitted in evidence the plaintiffs agreed that any claim for damages should be presented at a certain time and in a certain way and that there is no evidence before you to prove that such notice was given or that the defendant waived its requirement.

We refuse to so instruct you upon either ground, and while it will not perhaps assist you in determining this case, it is but fair to counsel to briefly state our reasons therefor.

This action is based upon the alleged negligence of the defendant. During the trial we have permitted the defendant under the general issue to show that the plaintiffs through their agents, entered into a special contract with respect to these shipments. Counsel for defendant now contend that because of the existence of such a contract plaintiffs are precluded from recovering except in an action upon said contract, and that therefore there is a variance which entitles the defendant to a judgment. In support of this contention they cite the case of *Leh v. D., L. & W. R. Co.*, 30 *Pa. Super. Ct.* 396, which appears to be in point. Counsel further contend that even in an action of tort the provision of the contract with respect to notice should have been averred and proved.

We have held in this case that by the great weight of authority a carrier, in consideration of a reduced rate of freight, may lawfully contract with a shipper to be responsible for no more in case of loss or damage than a fair valuation agreed upon at the time of shipment, and may further contract that proof of loss or damage shall be given within a certain time and in a certain way, provided such stipulation is reasonable.

The right of action exists at common law independent of contract, and even though an action might be brought upon the contract, the existence of the contract does not destroy the right to bring an action in tort.

A contract which should undertake to exempt the carrier for its own negligence or that of its servants would, as to that provision at least, be void as against public policy, and if we should here

Charge.

hold that the suits could only be upon the contract, we would in effect deprive the plaintiffs of their right of action for negligence at common law.

The provisions of the contracts which are in evidence are relevant in this case in but two respects, namely, to show the value of the cattle as agreed upon, and that the defendant should have a certain kind of notice as to damage. These provisions in no way touch the question of negligence; they neither prove nor disprove it. In this form of action they are wholly a matter of defense.

We know of no rule of law which would entitle the defendant to judgment because of a variance where the plaintiff proves accurately the substance of his allegation. We do not think a defendant can avail himself of his own evidence upon which to base a claim of variance.

"A variance results from a discrepancy between the allegation and proof of the same party, not between the allegations of one party and the evidence of the opposite party." 31 *Cyc.* 701; *Norcross v. Welton*, 59 *Vt.* 50, 7 *Atl.* 714; *Curtis v. Burdick*, 48 *Vt.* 166.

With respect to the other reason for the request for binding instructions, namely, that the notice was not given by the plaintiffs and not waived by the defendant, we will instruct you as best we can later in this charge.

The liability of a common carrier has been well stated by our own courts, and we say to you as was said in the case of *Klair v. Wilmington Steamboat Co.*, 4 *Penn.* 51, 54 *Atl.* 694, "A common carrier is bound to exercise the strictest care, and to deliver safely at their place of destination, the goods intrusted to him. He is regarded by the law in the light of an insurer; and in case the goods are injured, lost or destroyed, nothing will excuse or discharge him, but the act of God, or of the public enemies. By the act of God, is meant such inevitable accident as cannot be prevented by human care, skill or foresight; but results from natural causes; such as lightning and tempest, floods and inundation, etc.

"This rule of the common law has been spoken of as severe and rigorous; but like most of the principles of the common law,

it is founded in wisdom, and dictated by sound policy. The exigencies of society require the adoption of the rule. Men engaged in the various business transactions of life, are obliged from necessity to intrust common carriers with their goods. If such carriers are to be excused from all loss, destruction of, or injury to goods, in case it be shown that they have used due care, precaution, or attention, the party employing them, could never show the want of such care, unless he had an agent to accompany his goods during the whole time occupied in their transportation. The carrier might at all times by fraud and collusion, or by means of his own agents or servants, throw the burden of proof upon the owner or consignee of goods, by making out a statement of facts, which although untrue in itself, would show the exercise of ordinary care and diligence.

"Therefore, in actions against common carriers, founded on their ordinary liability for the loss of goods, the inquiry is not whether the carrier has used due care, or been guilty of negligence, but whether he can show that the loss happened by inevitable accident or by the public enemies."

That doctrine is stated also in *Reed & Walker v. P., W. & B. R. Co.*, 3 *Houst.* 206, and is modified to some extent by Chief Justice Gilpin in *Truax v. P., W. & B. R. Co.*, 3 *Houst.* 245, as follows: "And, as common carriers, they are held responsible for all losses, except those occasioned by inevitable accident, called the act of God, or of the public enemy. The act of God denotes such causes as are beyond the control of the carrier, and produce loss without the intervention of human agency. This rule of law, however, must be understood with the following qualifications, namely, that the carrier is not to be held responsible for ordinary wear and tear, and chafing of the goods in the course of their transportation, or for their ordinary loss or deterioration in quantity or quality, or for an inherent natural infirmity or tendency to damage, depreciation or decay," etc.

We have been asked by counsel for defendant to charge you as follows: "The carrier may, by contract, be exempt from all liability for injuries, such as occur from loading,overloading, suffocation and the like, and from the wickedness, escape or vicious-

ness of stock." We decline to charge you in the language requested. While such a contract may, under certain circumstances be valid, as where the owner or his agent accompanies the stock and superintends the loading, such instruction is not applicable to this case, for the reason that no such contract is in evidence.

We do say to you, however, that in the absence of negligence the defendant is not liable for injuries that may have happened to the cattle solely as a result of their inherent nature, or as has been said, through the vice or propensity of the animals themselves such as kicking, goring, wickedness and the like. This is true whether a contract to that effect has been entered into or not.

One of the provisions of the contract in evidence is as follows:

"That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the local freight agent of said carrier at his office in Price's Station, Md., within five days from the time said stock is removed from said car or cars, and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs."

This provision counsel for defendant contends entitles the defendant to binding instructions in its favor. In this form of action and in the state of these pleadings we think this a matter of defense, and therefore the burden of proving the required notice was not given is upon the defendant. It is not contended by the plaintiffs, however, that the notice as required by this provision of the contract was given, but they do contend that the defendant has waived all the benefits it is entitled to under it.

We say to you that such a notice, under the facts as produced in this case was a reasonable one, and unless the defendant has waived its rights thereunder, as was competent for it to do, these plaintiffs are not entitled to recover in this action. It is important, therefore, to determine whether the notice has been waived,

but we think this is a question for the jury to decide from this evidence and not a question that should be determined by the court.   Such a waiver may be proved by, or inferred from the acts and conduct of the defendant, or its duly authorized agents.   The object of conditions of this character, it is said, is to enable the carrier, while the occurrence is recent, to better inform himself of what the actual facts occasioning the loss or injury were, and thus protect himself against claims which might be made upon him after such a lapse of time as to frequently make it difficult, if not impossible, for him to ascertain their truth.

In determining this question you may take into consideration the alleged complaints made by the agent of the plaintiffs to the several local freight agents of the defendant, and all that was said and done by and between these persons at the time the cattle were delivered at the different points of destination, as well as the subsequent letters written by the plaintiffs to the division freight agent or other officer of the defendant, and also any reply made thereto.   If you find these facts to be such as would induce an ordinarily reasonable person to  believe that no further steps were necessary to be taken in the matter of giving notice, and that the plaintiffs as reasonable persons had a right to rely upon the statements of the local freight agents and the reply to their letters, and did rely upon them, and for that reason did not give the notice as required by the contract; we say to you such conditions would amount to a waiver on the part of the defendant.

This action is based upon negligence, and the burden of proving such negligence is upon the plaintiffs.   Negligence may be defined to be the want of reasonable care, that is, the failure to use such care as an ordinarily careful and prudent man would use under like circumstances.

The defendant is not responsible for injury or damage resulting from the negligence or want of care of any of the other connecting carriers.   It seems, however, where the defendant completed the transportation, and negligence be shown, the burden is then placed upon the defendant to prove that such negligence did not occur while the property was in its possession.   *Hutchinson on Carriers* lays down the rule in the following language:

"But a connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers, being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession". *Hutchinson on Carriers*, § 1348, and the many cases there cited.

In this connection however it must be borne in mind that the defendant is not liable, as we have said before, for the inherent vices of the animals themselves.

Where there is a conflict of testimony, as there is in this case, it is the duty of the jury to reconcile it if they can, but if they cannot, they should give credit to that which they think is most reliable, and most entitled to belief, under all the circumstances as disclosed by the evidence.

Your verdict should be for that party in whose favor is the preponderance or greater weight of the evidence.

If after a careful consideration of all the evidence in this case you should find that the defendant or its servants was negligent in loading, overloading, taking care of, feeding and watering of any one of these car loads of cattle, and should further be satisfied that the defendant has waived the requirements of the provision for notice, as set out in the contract in evidence, and that by reason of this negligence the cattle were injured, your verdict should be for the plaintiff. Otherwise, it should be for the defendant.

In ascertaining whether the defendant was negligent your inquiry should be directed to each of these shipments.

If you should find the defendant was negligent in all or any one of these shipments, and a consequent injury to the cattle, and that the notice was waived as aforesaid, the plaintiffs would

Charge.

be entitléd to recover and you should assess their damages accordingly. If, on the other hand, you should find the defendant negligent in one or more and not negligent as to all, you should confine the damages to the shipments where you are satisfied negligence has been shown.

If you should find for the plaintiffs, we say to you that their measure of damage is the difference between the value of the cattle in their damaged state and what would have been their value if delivered in good order, as the same may appear from the evidence with interest from the date of the delivery of said cattle by the defendant to the plaintiffs, and you should assess their damage at that amount. In this connection we say to you, however, that whatever may have been the real value of the cattle if they had been delivered in good condition, the plaintiffs cannot now claim a greater value than that agreed upon in the contracts admitted in evidence and now before you, so far as the agreed valuation is applicable to this case.

You have listened patiently and with great attention to all that has been said in this case. In coming to a conclusion you must be guided wholly by the evidence produced and the law as the court has stated it to you. Certain contracts have been admitted in evidence qualifiedly, that is, the contracts as a whole are before you, but only parts of them are admitted for your consideration.

We think we have made clear to you by what we have said in this charge as to what parts of these contracts are admitted and what excluded. In addition we have crossed out the parts excluded. You should therefore be careful to exclude from your consideration all parts of such contracts which the court has held to be irrelevant.

Verdict for plaintiffs.