**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

SCOTT ELLIS and DEBORAH ELLIS,    )
    )
    Plaintiffs,    )
    ) C.A. No.: N14C-03-051 PRW
    v.    )
    ) JURY TRIAL DEMANDED
TRI STATE REALTY ASSOCIATES LP,    )
    )
    Defendant.    )
    )
    )

Submitted: November 13, 2014
Decided: February 27, 2015
Amended: March 4, 2015

*Upon Defendant Tri State Realty Associate LP's Motion for Summary Judgment*
***GRANTED IN PART and DENIED IN PART[Amended]*[1]**

John D. Balaguer, Esquire, White & Williams LLP, Wilmington, Delaware, *Attorney for Plaintiffs Scott Ellis and Deborah Ellis*.

Colin M. Shalk, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, *Attorney for Defendant Tri State Realty Associates, L.P.*

**DAVIS, J.**

### INTRODUCTION

This is a civil contract action that also asserts various tort claims. In this action, Plaintiffs Scott Ellis and Deborah Ellis (collectively the "Plaintiffs") allege that, due to Defendant Tri State Realty Associates L.P.'s ("Tri State") wrongful conduct, certain personal property of Plaintiffs was taken and disposed of by a third party.

---

[1] The Court's decision on the Motion, issued on February 27, 2015, is amended to reflect the voluntary stipulated dismissal of Count V of the Complaint on September 24, 2014. *See* Amended Partial Stipulation of Dismissal of Count V: Consumer Fraud and Deceptive Trade Practices, of the Complaint.

On October 2, 2014, Tri State filed Defendant's Motion for Summary Judgment (the "Motion"), asking the Court to dismiss (i) Counts I through IV of the complaint; (ii) any claim for treble damages; (iii) the request for compensatory damages in an amount of $30,000; and (iv) any punitive damages claims by Plaintiffs.

For the reasons stated in this Opinion, the Motion is **DENIED** with respect to summary judgment dismissing Counts I through IV, and the Motion is **GRANTED** with respect to applying the Value Limit Clause to Counts I, III and IV, and with respect to dismissing Plaintiffs' punitive damages claim.

## PROCEDURAL BACKGROUND

Plaintiffs filed suit against Tri State on March 6, 2014. In the Complaint, Plaintiffs assert five claims: (i) Negligence or Gross Negligence (Count I); (ii) Trespass and Conversion (Count II); (iii) Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Count III); (iv) Breach of Constructive or Involuntary Bailment (Count IV); and (v) Consumer Fraud and Deceptive Trade Practices (Count V). Subsequent to the filing of the Complaint, the parties agreed to the dismissal, with prejudice, of Count V. On September 24, 2014, the Court, thereafter, entered the Amended Partial Stipulation of Dismissal of Count V: Consumer Fraud and Deceptive Trade Practices, of the Complaint.

On October 3, 2014, Tri State filed the Motion. The Motion seeks summary judgment on all claims asserted by Plaintiffs. The gravamen of the Motion is that Mr. Ellis is limited in his claims against Tri State by the contractual provisions contained in an agreement (the "Contract") entered into by Mr. Ellis and Tri State. In making its arguments, Tri State relies heavily on provisions of the Contract that limit (i) the types of claims that can be asserted by Mr. Ellis and (ii) the amount of any liability Tri State can have for any wrongful or improper foreclosure or

2

sale of the contents of the property Mr. Ellis stored under the Contract. In addition, Tri State seeks summary judgment against Ms. Ellis, arguing that she is not an intended third party beneficiary of the Contract and that Tri State owes her no duty, contractual or otherwise.

On October 31, 2014, Plaintiffs filed Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (the "Opposition"). In the Opposition, Plaintiffs argue that questions of fact exist with respect to all the claims asserted in the Complaint. Moreover, Plaintiffs contend that the question of punitive damages is a question of fact for a jury and not one ripe for summary judgment under the facts of this case. Plaintiffs contend that their claims do not arise under the Contract and, therefore, none of the provisions of the Contract limit the claims asserted in the Complaint.

On November 13, 2014, the Court held a hearing on the Motion and the Opposition. Counsel for Plaintiffs and Tri State appeared and had an opportunity to be heard. After hearing oral arguments, the Court took the matter under advisement.

**FACTUAL BACKGROUND**

At this stage in the proceeding and for purposes of the Motion, the parties do not dispute the material facts. Accordingly, the Court will use the facts as set forth in the Opposition.

*Facts:*

Plaintiffs purchased a new home in early 2013. Plaintiffs chose to store certain personal possessions at Tri State's self-storage facility at 100 Hickman Road, Claymont, Delaware (the "Facility"). On May 10, 2013, Mr. Ellis entered into the Contract with Tri State regarding the storage of Plaintiffs' personal property, in this case furniture, at the Facility. The Contract is signed by Mr. Ellis and Jane Lawson, Tri State's employee and manager of the Facility. Under the Contract, Mr. Ellis agreed to pay $160.00 per month for the use of unit 016 (the "Unit") at

3

the Facility. There is no evidence that Mr. Ellis ever failed to make a monthly payment or that any payment was not paid on a timely basis.

In June 2013, Ms. Lawson conducted a file review of the units at the Facility. Ms. Lawson erroneously determined, when looking at Tri State's computer system that the contents of the Unit had been auctioned off to a buyer, Donald Boone. In reality, the auction had occurred in April 2013, prior to when Mr. Ellis rented the Unit. Mr. Boone had purchased the previous occupier's property from the Unit and not Plaintiffs' property.

Ms. Lawson physically examined the Unit and observed that there was a lock on the Unit. Despite this, Ms. Lawson did not check Tri State's computer system to determine if the Unit had been rented to a new occupant. As stated above, Tri State had leased the Unit to Mr. Ellis, and Ms. Lawson executed the Contract on behalf of Tri State.

Ms. Lawson then contacted Mr. Boone. Ms. Lawson instructed Mr. Boone to come and empty the Unit. In response, Mr. Boone told Ms. Lawson that he did not recall purchasing the contents of the Unit, and asked Ms. Lawson to confirm whether he had purchased the contents. Although Mr. Boone expressed concerns that contents of the Unit did not belong to him, Ms. Lawson insisted that the contents did.

Ms. Lawson told Mr. Boone that if he did not remove the contents of the Unit within a specified period of time then Mr. Boone would be banned from purchasing the contents of Tri State's units in the future. After this communication, Mr. Boone came to the Facility and cut off Plaintiffs' lock that was used to secure the Unit. Mr. Boone then examined the property in the Unit and expressed to Ms. Lawson that he did not believe he was the purchaser of the property contained in the Unit. Mr. Boone stated that he did not remember the property and that he did not typically purchase units containing furniture.

4

Because Mr. Boone continued to disclaim ownership of the Unit's contents, Ms. Lawson again checked Tri State's computer system. Instead of checking to see if the Unit had been re-rented, Ms. Lawson simply checked to see if Mr. Boone had purchased the contents of the Unit in the past. Ms. Lawson did not make an effort to determine whether the Unit was currently rented. Ms. Lawson could have made this determination if she had referenced Tri State's computer tracking system or documentation.

Mr. Boone, at Ms. Lawson's insistence, then removed and disposed of Plaintiffs' property which was inside the Unit. To date, Plaintiffs' property has not been returned to Plaintiffs, and Plaintiffs have been advised that the property is not recoverable. Ms. Lawson wrote a statement following the disposal of the Plaintiffs' property in which Ms. Lawson admitted that she "dropped the ball and didn't use good judgment which caused this terrible situation."

***The Contract:***

The relevant portions of the Contract[2] for purposes of the Motion are:

- This agreement dated May 10, 2013, between SCOTT W ELLIS (hereinafter referred to as "OCCUPANT") and TRI STATE REALTY ASSOCIATES LP d/b/a Tri-State Self Storage (hereinafter referred to as "OWNER").

- OWNER does hereby rent to OCCUPANT storage unit number 016 (10.0x20.0) in a building located at 100 Hickman Rd., Claymont, DE 19703 to be used as storage for personal or business property for the monthly rate of 160.00 payable on the 10 of each month hereinafter. Rental payment is payable in advance.

- OCCUPANT acknowledges that OWNER does not carry any insurance which any way covers any loss whatsoever that OCCUPANT may have or claim by renting the Storage Unit. All property stored in the Storage Unit shall be at OCCUPANT'S sole risk.

- This Rental Agreement dated May 10, 2013, between SCOTT W ELLIS (hereinafter referred to as "OCCUPANT") and Tri State Self Storage – HH (hereinafter referred to as

---

[2] The Court is using the language of the Contract. Any partial sentences, misspellings or inconsistencies are contained in the Contract. For purposes of this opinion, the Court has not indicated such errors with the reference of "sic."

5

"OWNER").  In consideration of all the terms and conditions herein, Owner does hereby lease to Tenant the above-described storage space (hereinafter "Space" or "Premises").

- NON-LIABILITY OF OWNER FOR DAMAGES; INSURANCE OBLIGATION OF OCCUPANT:  The agreement is made on the express condition that OWNER is to be free from all liability and claim for damages by any reason of injury or damages of any kind to any person, including OCCUPANT, or property of any kind whatsoever and to whomever belonging, including OCCUPANT, form any cause or causes whatsoever while in, upon, or in any way connected with the premises during the term of this agreement or any extension hereof, except injuries caused by the affirmative act of OWNER or OWNER'S agent, and OCCUPANT hereby agrees to hold OWNER harmless from any liability, loss, cost (including without limitation, attorneys fees) or obligation on account of arising out of any such injuries or losses however occurring, and OCCUPANT agrees that OWNER'S liabilities for damage.  OCCUPANT agrees to maintain or secure fire, extended coverage, and comprehensive liability insurance covering the full insurance value of goods or property stored on the premises.  OCCUPANT has the right to be self insured, but assumes full risk for damage to stored property.  A Customer Storage Insurance brochure is available in rental office.
    Insurance carried by the OWNER shall be for the sole benefit of the OWNER.  The OCCUPANT shall make no claim whatsoever against OWNER'S insurance.  Therefore OCCUPANT secures his own insurance to protect himself and his property against all perils of whatsoever nature.  OWNER shall not be liable whatsoever to any to any extent to OCCUPANT or OCCUPANT'S invitees, family, employees, agents or servants for any personal injury or property damage or loss from theft, vandalism, fire, smoke, water, mold, mildew, rodents, hurricanes, rain, tornadoes, explosions, earthquakes, acts of God, or any cause whatsoever.  It is specifically understood and agreed that OWNER need to be concerned with the kind, quantity, or value of personally property or other goods stored by OCCUPANT.[3]

- RELEASE OF LIABILITY:  The OCCUPANT hereby releases the OWNER from loss of or damage to OCCUPANT'S personal property due to theft, vandalism, fire, smoke, water, mold, mildew, rodents, hurricanes, rain, tornadoes, explosions, earthquakes, acts of God, or any cause whatsoever.  OCCUPANT agrees that property stored is at the sole rise of the OCCUPANT.

- SEVERABILITY:  In the event that any of the provisions or portions thereof of this storage agreement are held to be unenforceable, invalid, void or illegal, by any court of competent jurisdiction the validity, legality and enforceability of the remaining provisions or portions hereof shall not be affected or impaired thereby.

- VALUE LIMIT: OCCUPANT agrees not to store property with a total value in excess of $5,000 without prior written consent of OWNER, which consent may be withheld in OWNER'S sole discretion and, if such written consent is not obtained, the total value of OCCUPANT'S property shall be deemed not to exceed $5,000.  OCCUPANT further

---

[3] Hereafter referred to as the "Non-Liability Clause."

agrees that the maximum liability of OWNER to OCCUPANT for any claim by OCCUPANT, including by not limited to any suit which alleges wrongful or improper foreclosure or sale of the contents of a storage unit is $5,000. Nothing in this section shall be deemed to create any liability on the part of the OWNER to OCCUPANT for any loss or damage to OCCUPANT'S property, regardless of cause.[4]

- EMOTION LOSS: OCCUPANT agrees not to store collectibles; heirlooms, jewelry, works of art or any property having special or sentimental value to OCCUPANT. Nothing herein shall constitute any agreement or admission by OWNER that OCCUPANT stored property has any value. OWNER shall not be liable for any loss occasioned by or resulting from emotional distress.

- NOTICE TO TENANT. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT AND FULLY UNDERSTAND THE COVENANTS CONTAINED HEREIN. KEEP A COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. TENANT HEREBY ACKNOWLEDGES BY SIGNING THIS AGREEMENT THAT HE HAS READ, UNDERSTOOD AND ACCEPTS ALL TERMS AND CONDITIONS EXPRESSED IN THIS AGREEMENT.

## STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[5] Summary judgment will be granted if, after viewing the record in a light most favorable to a non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[6] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[7] The moving party bears

---

[4] Hereafter referred to as the "Value Limit Clause."

[5] *Merrill v. Crothall-American Inc.,* 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322, 325 (Del. Super. Ct. 1973).

[6] *Merrill,* 606 A.2d at 99-100; *Dorr-Oliver,* 312 A.2d at 325.

[7] *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962). *See also Cook v. City of Harrington,* 1990 WL 35244, at *3 (Del. Super. Ct. Feb. 22, 1990) (citing *Ebersole,* 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates ... that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

7

the initial burden of demonstrating that the undisputed facts support his claims or defenses.[8] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.[9]

However, to survive summary judgment, a plaintiff's claim must be based on more than mere speculation. "The Court must decline to draw an inference for the non-moving party if the record is devoid of facts upon which the inference reasonably can be based."[10] An inference cannot be based on "surmise, speculation, conjecture, or guess, or on imagination or supposition."[11]

## DISCUSSION

### *The non-liability clause of the Contract does not limit Mr. Ellis' claims against Tri State.*

In assessing the Complaint's claims, the Court must first determine whether Tri State validly released itself from liability for negligence or other liability claims.

Contractual provisions purporting to relieve a party from liability for its own negligence, or otherwise, are not favored in Delaware.[12] Nevertheless, such provisions will be upheld when the contractual language makes it crystal clear and unequivocal that the parties contemplated and specifically agreed that the contracting party would be relieved of its own negligence.[13] A reference to "negligence" in general will not suffice to insulate a party from liability for negligence. Instead, for an exculpatory clause to be valid, a specific reference to the negligent wrongdoing of the protected party is required.[14]

---

[8] *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole,* 180 A.2d at 470).
[9] *See Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).
[10] *In re Asbestos Litig.*, C.A. No. N10C-12-011 ASB, 2012 WL 1408982 at *2 (Del. Super. Ct. Apr. 2, 2012) (quoting *In re Asbestos Litig.*, CIV.A. 01C-11-239, 2007 WL 1651968 at *16 (Del. Super. Ct. May 31, 2007)).
[11] *Id.*
[12] *J.A. Jones Const. Co. v. City of Dover*, 372 A.2d 540, 552 (Del. Super. Ct. 1977).
[13] *Id.* at 553.
[14] *Id.*

Here, the Contract contains the Non-Liability Clause. The Non-Liability Clause states that the Unit occupant/tenant shall secure "his own insurance to protect himself and his property against all perils of whatsoever nature."[15] Additionally, the Contract releases the owner of liability for loss or damage to the occupant's personal property due to "any cause whatsoever."[16]

While the Contract contains the Non-Liability Clause and other general clauses requiring Mr. Ellis to secure insurance and releasing Tri State from liability for loss or damage due to any cause, it fails to specifically state that Tri State is to be relieved of liability for its own wrongdoing. In fact, the Non-Liability Clause fails to mention the word "negligence" altogether. Under Delaware law, the language of the contract is not sufficient to relieve Tri State of liability, and Mr. Ellis may bring a negligence claim.

As for the Complaint's other causes of action, the Court notes that each of these other counts are intentional torts or breach of contract causes of action. Accordingly, the Court denies the Motion to the extent it seeks judgment against Mr. Ellis on Counts I through IV of the Complaint.

### Ms. Ellis is not a third party beneficiary of the Contract.

The Court holds that Mr. Ellis is the only party that has standing to assert claims under the Contract, including a claim for negligence. Generally, only the parties to a contract have enforceable rights and obligations and may sue for breach of that contract.[17] However, a third party beneficiary may recover contractual damages if the underlying contract was made for the benefit of the third party.[18]

---

[15] *See* Storage Lease Agreement, paragraph 8.
[16] *See* Storage Lease Agreement, paragraph 9.
[17] *Triple C Railcar Serv., Inc. v. City of Wilm.*, 630 A.2d 629, 633 (Del. 1993); *Maglione v. BCBSD, Inc.*, 2003 WL 22853421 at *3 (Del. Super. Ct. July 29, 2003).
[18] *Global Energy Finance, LLC v. Peabody Energy Corp.* at 2010 WL 4056164 at *25 (Del. Super. Ct. Oct. 14, 2010).

9

A third party beneficiary is created where: (1) the contracting parties intended that the third party would benefit from the contract, (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation to the third party, and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract.[19] The Court will look to the language of the contract to determine whether an intended third party beneficiary is created.[20] A third party who may well benefit from a contract, but is not part of any beneficial intent by the contracting parties, is an incidental beneficiary with no enforceable rights under the contract.[21]

Mr. Ellis is the only plaintiff who is a party to the Contract. Only his name is on the Contract, and he is the only plaintiff who signed the Contract. There is no evidence in the record that Mr. Ellis or Tri State intended the written Contract to benefit Ms. Ellis. The Contract does not mention Ms. Ellis or others. The Court will not extend causes of action entirely related to a contractual relationship between Mr. Ellis and Tri State to Ms. Ellis absent evidence that she was an intended third party beneficiary. Under these circumstances only Mr. Ellis can assert the claims contained in the Complaint against Tri State.

Plaintiffs argue that they are not asserting claims, especially the negligence claim (Count I), under the Contract. However, the Court does not understand how Tri State would owe a common law duty of care to Plaintiffs absent an agreement. The entire relationship and the Complaint's claims arise out of a contractual undertaking between Mr. Ellis and Tri State. Tri State would not normally have a duty of care to Plaintiffs to store their property in a particular manner. The Court questioned Plaintiffs' counsel on what the common law duty would be

---

[19] *State Dept. of Transp. v. Figg Bridge Engineers, Inc.*, 2011 WL 5593163 at *2 (Del. Super. Ct. Nov. 9, 2011).
[20] *Bromwich v. Hanby*, 2010 WL 8250796 at *2 (Del. Super. Ct. July 1, 2010) (granting summary judgment as to a breach of contract claim where the contract did not refer to the plaintiffs by name, general reference, or otherwise contain language that demonstrated an intent to confer third party beneficiary status upon the plaintiffs).
[21] *McClements v. Savage*, 2007 WL 4248481 at *1 (Del. Super. Ct. Nov. 29, 2007).

10

between Tri State and Plaintiff in the absence of the Contract, and the answer remained that the Complaint does not assert claims under the Contract. Plaintiffs have not provided the Court with any support that the relationship between Tri State and Plaintiffs arose from something other than a contract.

Mr. Ellis is also the only party that may assert a negligence claim. To establish a legal duty for purposes of establishing a *prima facie* cause of action for negligence, Delaware law requires that the plaintiff demonstrate the existence of a legally significant relationship between the plaintiff and defendant.[22] Here, no legally significant relationship exists between Tri State and Ms. Ellis. Only Mr. Ellis signed the Contract with Tri State. While Ms. Ellis is listed as the emergency contact person in the Contract, there is no evidence that Ms. Ellis ever interacted with Tri State regarding the property stored in the Unit. It is clear that the relationship arising from the Contract was limited to one between Tri State and Mr. Ellis alone. Accordingly, under Delaware Law, Tri State owes Ms. Ellis no duty of care, and Ms. Ellis may not proceed on a negligence claim against Tri State.

The Court notes, however, that none of Mr. Ellis' claims asserted in the Complaint are rendered invalid by dismissing Ms. Ellis from the Complaint. Mr. Ellis asserts his claims against Tri State based on his relationship with Tri State and Tri State's agreed upon contractual duty to store Plaintiffs' property under the Contract.

---

[22] *In re Asbestos Litigation*, 2007 WL 4571196 at *4 (Del. Super Ct. Dec. 21, 2007) (quoting *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988)).

11

***Damages under Counts I, III and IV are limited to $5,000.***

The Court must next determine whether the Value Limit Clause limiting Tri State's liability to $5,000 is applicable to the claim asserted by Mr. Ellis in the Complaint. The Court holds that Counts I, III and IV (all counts arising out of the contractual relationship between Mr. Ellis and Tri State) are limited by the Value Limit Clause. The Court will not apply the Value Limit Clause to Count II of the Complaint. This logically follows from the facts alleged in the Complaint. If Tri State is found to have converted Plaintiffs' property and that property is worth more than $5,000 then Tri State would reap a windfall for any intentional conversion by limiting Mr. Ellis' claim to $5,000.[23]

In making these determinations, the Court first considered the legal relationship between the parties and the Complaint's claims. The relationship between Tri State and Mr. Ellis was created by contract. Because the relationship exists solely by reason of contract, it follows that the duties owed to each other arise solely from the Contract. However, Mr. Ellis brings a negligence claim, asserting that Tri State breached its common law duty to exercise reasonable care in storing his property. As previously discussed, because the Contract does not unequivocally relieve Tri State of liability for its own negligence, Mr. Ellis may bring such a claim. Thus, the question becomes whether the remedies provided by the contract apply to Mr. Ellis' claims for Negligence (Count I), Breach of Contract and Covenant of Good Faith and Fair Dealing (Count III), and Breach of Constructive or Involuntary Bailment (Count IV).

In *Delmarva Power & Light Co. v. ABB Power T & D Co., Inc.*, the Court held " . . . that a party cannot convert what is clearly a contractual dispute for which there are remedies

---

[23] *See Fidelity Storage Co. v. Kingsbury*, 79 F.2d 705, 706 (App. D.C. 1935) (error to sustain verdict in excess of limitation of liability provision in the absence of conversion or goods or fraud).

12

available under the negotiated terms of the contract to a tort claim simply by pleading claims of negligence."[24]

Here, the dispute involves the relationship created under the Contract. Under the Contract, Tri State agreed to rent the Unit to Mr. Ellis. As a result, Tri State had a duty to store Mr. Ellis' property while Mr. Ellis had a duty to pay Tri State the storage fee. However, no duties would have arisen between the parties absent the Contract. Thus, the dispute between Mr. Ellis and Tri State is clearly contractual, even if asserted as a negligence claim. The Contract provided for appropriate remedies agreed on by the parties that limited Mr. Ellis' recovery potential to $5,000. In asserting that Tri State breached its common law duty to exercise reasonable care, Mr. Ellis attempts to convert what is a contractual dispute into a negligence action to avoid the limitation of damages contemplated and agreed upon in the Contract.

In *Klair v. Philadelphia B & W.R. Co.*, the Court found a clause protecting a railroad from liability for its negligence in transporting the plaintiff's cattle invalid as against public policy.[25] Nevertheless, the Court went on to apply other terms of the contract to the plaintiff's negligence action.[26] First, the Court enforced a clause requiring notice of a claim for damages within five days after the cattle were removed from the rail cars, and submitted the question of whether the railroad waived such notice to the jury.[27] Second, the Court enforced a clause limiting the amount of damages available to the plaintiff.[28]

---

[24] *Delmarva Power & Light Co. v. ABB Power T & D Co., Inc.*, 2002 WL 840564 at *6 (Del. Super. Ct. 2002).
[25] *Klair v. Philadelphia, B. &W.R. Co.*, 78 A. 1085 (Del. Super. Ct. 1910).
[26] *Id.*
[27] *Id.*
[28] *Id.*

13

Here, the Contract, through the Value Limit Clause, limits Tri State's liability to $5,000.[29] Such a limitation is equivalent to the contractual limitation on the value of goods to be stored in the Unit. In other words, the limitation is equivalent to the risk which Tri State agreed to bear in the Contract. Although Mr. Ellis brings a negligence claim rather than just a breach of contract claim, the limitation on liability must still apply. As was the case in *Klair,* the contractual remedies may not be altered simply because Tri State failed to effectively waive liability for its negligence. While Mr. Ellis may bring a negligence action, the maximum amount recoverable is $5,000, as provided by the Contract. Otherwise, Mr. Ellis could simply convert a breach of contract action into a negligence action to avoid terms of the Contract that provided the basis for the current dispute in the first place.

This same analysis applies to Counts III Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing and Count IV Breach of Constructive or Involuntary Bailment. Mr. Ellis cannot avoid the Value Limit Clause in the Contract on his contract based claims. The parties contemplated that Mr. Ellis would not store property with a value of more than $5,000 absent the written consent of Tri State. Mr. Ellis did not obtain written consent to store more than $5,000 worth of property. Moreover, Tri State even made insurance information available to Mr. Ellis through the Customer Storage Insurance brochure available in rental office. Clearly, Tri State and Mr. Ellis understood that claims relating to the Contract would be limited to $5,000.

---

[29] The Plaintiffs rely on *Trethewey v. Basement Waterproofing Nationwide Inc.,* No. CIV.A. 91C-07-023, 1994 WL 680072 (Del. Super. Ct. Oct. 19, 1994), for the contention that where a contract does not specify that a defendant is protected from liability due to its own negligence, the limiting provision on damages is inapplicable to the negligence of the defendant. *Trethewey*, however, is not on point. First, the Court in *Trethewey* analyzes the matter under Article 2 of the UCC. Article 2 does not apply in this case. Additionally, the liability limiting provision in the contract in *Trethewey* was not calculated to recompense for possible negligence. In this case, however, Mr. Ellis agreed not to store property with a total value in excess of $5,000 without prior written consent of Tri State, and Tri State relied on Mr. Ellis that he would abide by that clause.

*The facts do not support the imposition of punitive damages*

As a general rule, the imposition of punitive damages has been sanctioned only where the defendant's conduct has been particularly reprehensible, *i.e.*, reckless, or motivated by malice or fraud.[30] While the question of punitive damages is ordinarily for the trier of fact, summary judgment is appropriate if the evidence permits no reasonable inference that defendant's conduct was sufficiently reprehensible to warrant the imposition of punitive damages.[31] Indeed, it is essential that the Court test the legal sufficiency of a claim for punitive damages where an appropriate motion has been tendered to avoid an award of punitive damages based on sympathy alone.[32] The standard for an award of punitive damages in Delaware is set forth in *Jardel Co., Inc. v. Hughes*. In that case, the Supreme Court adopted § 908 of the Restatement (Second) of Torts (1979) which provides that "punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."[33] Citing comment (b) to § 908, the Supreme Court noted that the penal aspect and public policy considerations which justify an award of punitive damages require that such damages be imposed only after a close examination of whether the defendant's conduct is "outrageous" because of "evil motive" or "reckless indifference to the rights of others."[34]

Under this standard, mere negligence such as inadvertence, mistake or errors of judgment will not justify the imposition of punitive damages.[35] Even gross negligence will not suffice.[36] Evil motive requires a showing of conscious awareness, whereas reckless indifference suggests a

---

[30] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987).
[31] *Id.* at 527.
[32] *Id.* at 528.
[33] *Id.* at 529.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 530.

conscious indifference.[37] Each requires that the defendant foresee that his unacceptable conduct threatens particular harm to the plaintiff.[38] Two elements are required for recklessness to exist: first, the outrageous act, and second the actor's state of mind and the issue of foreseeability, specifically the perception the actor had or should have had of the risk of harm which his conduct would create.[39] Thus, evidence as to the defendant's state of mind is vital in any claim for punitive damages.

The facts in this case are unfortunate. However, to proceed on a punitive damages claim, Mr. Ellis must show that the conduct of Tri State or Tri State's agent is "outrageous" because of "evil motive" or "reckless indifference to the rights of others." Ms. Lawson appears to have made mistakes and errors of judgment. Ms. Lawson may have acted negligently or with gross negligence but that type of conduct does not rise to such a high level as to warrant the imposition of punitive damages. Based on this record, the Court finds that the facts, taken together, do not support submitting the question of punitive damages to the jury.[40]

---

[37] *Id.* at 529.
[38] *Id.* at 529-30.
[39] *Id.*
[40] The Court notes that the Contract contains a jury waiver provision that may mean that any trial in this case will be a non-jury trial. *See* Storage Lease Agreement, paragraph 10.

CONCLUSION

Based on the above arguments, viewing the evidence in the light most favorable to the non-moving party, the Motion is **DENIED** with respect to summary judgment dismissing Counts I through IV of the Complaint.  The Motion is **GRANTED** with respect to applying the Value Limit Clause to Counts I, III and IV, and with respect to dismissing Plaintiffs' punitive damages claim.

**IT IS SO ORDERED**.

/s/ *Eric M. Davis*

Eric M. Davis
Judge